UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 3023  SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: *Kimelia Wooten*, No. 2:22-cv-01636 | : : : : : | HON. JANE TRICHE MILAZZO MAG. JUDGE MICHAEL NORTH |

**DEFENDANT ACCORD HEALTHCARE, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Kimelia Wooten ("Plaintiff") alleges that she experienced excessive tearing due to lacrimal canalicular stenosis that was caused by her treatment with the prescription chemotherapy agent docetaxel for breast cancer between April 2015 and June 2015. Dismissal is warranted because Plaintiff's claims are time-barred under Louisiana law. Plaintiff testified that her tearing started during her docetaxel therapy in 2015, persisted for years thereafter, and that she suspected it was related to her chemotherapy treatment. In December 2017, she filed a separate lawsuit against Accord related to another alleged side effect of that very same docetaxel use, persistent hair loss; yet Plaintiff failed to investigate her *tearing-related* claims until years later when she saw an advertisement for lawsuits regarding tearing associated with chemotherapy (similar to the advertisement that prompted her 2017 lawsuit). Moreover, she retained counsel in connection with the instant lawsuit on June 1, 2020, but did not file her Complaint until June 6, 2022. Her claims, based on alleged injuries that began in *2015*, are untimely under Louisiana's one-year prescription period. Further, *contra non valentem* is inapplicable given Plaintiff's failure

to investigate, and in any event, cannot toll the prescription period beyond when she saw an advertisement and retained counsel, which occurred over two years before she filed her Complaint.

In addition, Louisiana's learned intermediary doctrine bars Plaintiff's claims. Her prescribing oncologist, Dr. Laura Chauvin, is steadfast that she was aware of the risk of docetaxel-associated tear duct obstruction or blockage that may require surgery and would not have changed her decision to prescribe docetaxel despite Plaintiff's proposed warnings language. Moreover, Dr. Chauvin did not rely on Accord's label in prescribing docetaxel to Plaintiff. Unable to establish proximate cause, Plaintiff's claims are subject to summary judgment as a matter of law.

## II.  STATEMENT OF FACTS

Plaintiff, a resident of Houma, Louisiana, holds an associate degree in engineering technology from Nicholls State University and a Doctorate of Theology from Fellowship International Bible College. *See* Statement of Undisputed Material Facts ("SUMF"), ¶¶ 1–2. On March 25, 2015, Plaintiff (then 54 years old) was diagnosed with breast cancer. *Id.*, ¶ 3. Her oncologist was – and is – Dr. Laura Chauvin, a board-certified medical oncologist and hematologist. *Id.*, ¶ 4. Plaintiff's treatment regimen included surgery, radiation, and chemotherapy; specifically, Dr. Chauvin prescribed docetaxel to Plaintiff, which was administered from April 14, 2015 until June 30, 2015. *Id.*, ¶¶ 5–6, 16. Dr. Chauvin testified that, of the available chemotherapy options, docetaxel chemotherapy was the *only* appropriate treatment given Plaintiff's high risk for recurrence. *Id.*, ¶ 7.

Dr. Chauvin only prescribes a chemotherapy regimen once she is satisfied that the benefits outweigh the risks, and Plaintiff relied upon and trusted Dr. Chauvin's judgment to balance the risks and benefits of different chemotherapy options. *Id.*, ¶¶ 13–14. Dr. Chauvin testified that she refers to multiple different sources to make prescribing decisions and manage patient care,

including industry guidelines, medical literature, UpToDate, and the Physician's Desk Reference. *Id.*, ¶¶ 8, 10. Dr. Chauvin does not look to chemotherapy manufacturers for instructions on how to treat side effects of chemotherapy, including excessive tearing and tear duct obstruction, and had never heard of Accord before this litigation, never looked to Accord specifically for docetaxel labeling or prescribing information, and never read Accord's prescribing information for docetaxel. *Id.*, ¶¶ 9, 12.

Dr. Chauvin believed – and still believes – that docetaxel was the best and only regimen for Plaintiff's cancer. *Id.*, ¶¶ 7, 15. Even in the face of Plaintiff's proposed warnings language, Dr. Chauvin maintained that she would not have changed her decision to prescribe docetaxel to Plaintiff. *Id.*, ¶ 17. Dr. Chauvin testified that at the time she prescribed Plaintiff's chemotherapy, she was independently aware (i) that chemotherapy can cause tearing in patients, (ii) that chemotherapy-induced tearing can be associated with underlying tear duct obstructions, (iii) that such obstructions may require surgical treatment, (iv) of the association between docetaxel and tearing relating to underlying obstruction, (v) that docetaxel-related tearing may require surgical treatment, and (vi) of the need to refer patients with tearing to ophthalmologists. *Id.*, ¶ 11. In fact, Dr. Chauvin testified that if Plaintiff presented to her today with the same diagnosis, she would recommend *the very same* docetaxel-containing chemotherapy regimen. *Id.*, ¶ 17.

Plaintiff's tearing started during her docetaxel chemotherapy in approximately May 2015, and was initially light and intermittent. *Id.*, ¶¶ 18–19. However, by the end of her chemotherapy, her tearing had become "consistent throughout the day" and "constant, all the time." *Id.*, ¶ 19. Even after chemotherapy, Plaintiff described her tearing as "severe" and maintained that "at no point did it ever get better." *Id.*, ¶ 20. Based on discussions with Dr. Chauvin and the fact that she had not experienced persistent tearing prior to treatment, Plaintiff suspected her tearing was related to

3

her chemotherapy, and Dr. Chauvin referred her to an ophthalmologist. *Id.*, ¶ 22. While Plaintiff could not recall asking Dr. Chauvin about the specific cause of her persistent tearing, Dr. Chauvin confirmed that had Plaintiff done so, she would have noted the connection to her docetaxel use. *Id.*, ¶¶ 24.

Plaintiff sought care related to her tearing as early as November 2015, as she felt it "was not just stopping and going away on its own." *Id.*, ¶¶ 21. As of an April 7, 2016 appointment, Plaintiff believed her tearing would not resolve without further action. *Id.*, ¶ 23. Yet there is *no indication* that Plaintiff ever informed the ophthalmologic physicians she saw between 2015 and 2017 that her tearing began during chemotherapy or that she suspected there was a connection, a point these physicians would have wanted to consider. *Id.*, ¶¶ 27–28. While she was diagnosed with dry eye syndrome by those providers, Plaintiff maintains this diagnosis was inaccurate because her tearing persisted. *Id.*, ¶ 29. Through June 22, 2020, Plaintiff was steadfast that her tearing did not improve "at all," that her symptoms remained consistent, and that there was no period during which she was not tearing. *Id.*, ¶ 26. Yet, despite this backdrop of allegedly ceaseless, severe, and persistent tearing, Plaintiff could not recall ever researching the issue. *Id.*, ¶¶ 30, 34.

In December 2017, over four years prior to the initiation of this lawsuit, Plaintiff filed a *separate* lawsuit against Accord for a different alleged side effect of the very same docetaxel regimen, persistent hair loss. *Id.*, ¶ 31. She testified she learned of her potential legal claims with respect to this current lawsuit after a member of her church sent her an online advertisement, which occurred "shortly before" she contacted a law firm. *Id.*, ¶ 32. Plaintiff ultimately retained counsel in connection with this litigation on June 1, 2020, yet she did not file her lawsuit against Accord until June 6, 2022, two years later. *Id.*, ¶¶ 33, 35.

4

### III. ARGUMENT

#### A. Standard of Review

Summary judgment is appropriate where the evidence demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *QBS Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F. 3d 439, 442 (5th Cir. 2009). The movant bears the initial burden of informing the district court of the basis for the motion and identifying record evidence establishing the absence of a genuine issue of material fact. *Millet v. Huntington Ingalls Inc.*, No. CIV.A. 13-0934, 2014 WL 5018029, at *1 (E.D. La. Oct. 7, 2014).

Once the movant has satisfied this initial burden, the burden shifts to the non-movant to show that a genuine dispute of material fact does, in fact, exist. *Haley v. Am. Sec. Ins. Co.*, 643 F. Supp. 3d 604, 609 (E.D. La. 2022). A genuine issue of material fact exists only if a reasonable jury could return a verdict for the non-movant. *Id.* While the Court must draw all reasonable inferences for the non-movant, the non-movant cannot survive summary judgment by resting on the pleadings, conclusory allegations, unsubstantiated assertions, or by the mere existence of a scintilla of evidence. *Id.*

Finally, where the non-movant fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317 322–23 (1986). So, if the non-movant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to judgment as a matter of law. *Id.* at 323.

## B. **Plaintiff's Claims are Time-Barred.**

Louisiana applies a one-year prescriptive period for product liability claims. *See* La. Civ. Code art 3492.[1] Generally, the prescriptive period begins to run from the day the injury or damage is sustained. *Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 344–45 (5th Cir. 2010). Ordinarily, the party pleading prescription bears the burden of proving that the claims have prescribed. *Terrebone Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). However, once the movant has shown that over a year elapsed between the time of the injury and the filing of suit, "the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription[.]" *Id.*

Even under a lenient interpretation of the rule that prescription "commences to run from the day injury or damage is sustained" (La. Civ. Code art. 3492), Plaintiff's claims are time-barred based on her own testimony. Plaintiff suspected her tearing was related to her chemotherapy and sought treatment related to her tearing as early as November 2015. Further, she described her post-chemotherapy tearing as "severe," claimed that "at no point did it ever get better," and recognized "it was not just stopping and going away on its own." As of her April 7, 2016, follow-up appointment with Dr. Chauvin, Plaintiff's tearing had not resolved. Whether the prescription period ran from the end of chemotherapy, the date she first sought treatment for the alleged injury, or the date she realized her tearing was persistent, the latest deadline to file her complaint was April 7, 2017—*i.e.*, *five years before* the initial Short Form Complaint was filed.

---

[1] Effective July 1, 2024, Louisiana amended its prescriptive period for personal injury actions from one year to two years. However, this change was explicitly given "prospective application only" and applies only to actions arising "after the effective date[.]" La. Civ. Code art. 3492; *see also Petite v. Hinds*, No. CV 24-2033, 2025 WL 708530 (E.D. La. Mar. 5, 2025) (Milazzo, J.) (applying one-year prescriptive period to injury arising in June 2018 and dismissing claim as time-barred). Thus, Louisiana's one-year prescriptive period remains applicable to Plaintiff's claims.

Thus, Accord has met its burden to show Plaintiff's claims are facially prescribed and subject to summary judgment. Further, Plaintiff cannot establish suspension or interruption of the prescriptive period based on *contra non valentem*. *Terrebone Par. Sch. Bd.*, 310 F.3d at 877.

### C. *Contra Non Valentem* is Inapplicable Given Plaintiff's Failure to Investigate.

Louisiana recognizes an equitable tolling doctrine known as *contra non valentem*, which "provides some grace for those . . . who are unaware that their injury was caused by a tort." *In re Taxotere (Docetaxel) Prods. Liab. Litig.* (*Johnson*), No. 16-15607, 2019 WL 2995897, at *2 (E.D. La. July 9, 2019), *aff'd*, 995 F.3d 384 (5th Cir. 2021). This doctrine does not toll claims in perpetuity; rather, the prescriptive period ran once Plaintiff had "actual or constructive knowledge of facts indicating to a reasonable person that . . . she is a victim of a tort." *Id.*; *see also Kryzhanovskyi v. Cager*, No. CV 24-1924, 2024 WL 5010258, at *3 (E.D. La. Dec. 6, 2024) (the prescription period is tolled only "during the period of time when the action was not reasonably knowable by the plaintiff."). [2] In the context of medical causation, the prescription period begins to run once Plaintiff had "actual or constructive notice of the causal connection between the medical treatment and the subsequent condition." *Carter*, 391 F. App'x at 345.[3]

Plaintiff knew or should have known of a possible causal relationship between her docetaxel use and her allegedly persistent tearing in 2015. Indeed, Plaintiff admittedly "suspected" that her tearing was "probably" due to the chemotherapy, based on her discussions with Dr.

---

[2] Because this doctrine is "a judicial exception to the statutory rule of prescription," Louisiana courts "strictly construe this doctrine and only extend its benefits up to the time that the plaintiff has actual or constructive knowledge of the tortious act." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000). Put another way, it applies only in "extreme circumstances." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010).

[3] There is no requirement that Plaintiff "be informed by an attorney or physician of a possible [claim] before prescription begins to run." *In re Taxotere (Johnson)*, 2019 WL 2995897 at *2. Nor is Plaintiff allowed "to wait to sue until they are certain of what and/or who caused their injury." *In re Taxotere (Hughes)*, 2021 WL 6201313 at *2.

Chauvin and the fact that she had never experienced similar tearing before chemotherapy. *See* SUMF, ¶ 22.

Given this notice, Plaintiff then had "an obligation to further investigate the facts in order to pursue her claim before the one-year prescriptive period lapse[d]." *In re Taxotere (Docetaxel) Prods. Liab. Litig.* (*Hughes*), No. 17-11769, 2021 WL 6201313, at *2 (E.D. La. Apr. 28, 2021); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999) ("The commencement of prescription does not necessarily wait for the pronouncement of a victim's physician … [but runs] when there is enough notice to call for an inquiry about a claim."). Given that there is an obligation to investigate, where no due diligence is shown, *contra non valentem* is unavailable. *In re Taxotere (Johnson)*, 2019 WL 2995897, at *3, *4 (dismissing multiple claims as prescribed and holding doctrine inapplicable given failure to investigate between onset of respective injuries and filing; "Because [she] had a duty to investigate and failed to do so, *contra non valentem* is inapplicable to her claims."). The "ultimate issue is the reasonableness of the [plaintiff's] action or inaction, in light h[er] education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Campo v. Correa*, 828 So. 2d 502, 511 (La. 2002).

Plaintiff is a highly educated and intelligent woman who holds multiple degrees, including a doctorate degree. She repeatedly emphasized that her tearing, which began during chemotherapy and persisted thereafter, was "severe" and unrelenting and that there was no period between the end of her chemotherapy and June 2020 during which did not experience tearing. Thus, Plaintiff had a duty to investigate the matter but repeatedly disclaimed ever doing so. Against this backdrop, Plaintiff's failure to investigate was unreasonable. *In re Taxotere (Docetaxel) Prods. Liab. Litig.* (*Thibodeaux*), No. 16-15859, 2020 WL 8257755, at *3 (E.D. La. Jan. 23, 2020), *aff'd*, 995 F.3d 384 (5th Cir. 2021) (rejecting application of *contra non valentem* where plaintiff "was on notice

8

that something was amiss" after her hair did not grow back for "several years."). Worse yet, Dr. Chauvin testified that had she been asked, she would have confirmed Plaintiff's suspicion that her new onset and persistent tearing was connected to her docetaxel use. Dr. Chauvin's documentation in late 2015 and early 2016 of "epiphora due to insufficient drainage" and a suspicion of tear duct obstruction that may need to be "recanalized" supports this testimony.

Accord anticipates that Plaintiff will argue that she was "misdiagnosed" with dry eye syndrome between 2015 and 2017 and that she was thereby prevented from discovering the relationship between docetaxel and her tearing. Not so. Since Plaintiff failed to inform any ophthalmologic physician she saw between 2015 and 2017 that her tearing began during chemotherapy, much less that she suspected the tearing was related to such treatment, those providers had no opportunity to even consider her docetaxel use as a risk factor for her tearing. *See* SUMF, ¶ 28 (ophthalmologist Dr. Keith Kellum testifying he had no record of her tearing beginning during chemotherapy and noting that would be something he would want to consider in assessing her tearing). Further, Plaintiff believed the dry eye diagnosis to be inaccurate yet did not ask Dr. Chauvin or any of the pre-suit ocular providers about the cause of her nonstop tearing, why it was so persistent, and/or why it did not respond to the prescribed treatment. Instead, she undertook *no* investigation, and it was only after seeing an advertisement for litigation regarding chemotherapy-associated tearing that she filed her lawsuit, over three years later. Plaintiff's failure to investigate is all the more inexcusable in light of the fact that she had *already* filed a lawsuit against Accord regarding another alleged docetaxel-associated side effect, persistent hair loss.

In sum, Plaintiff failed to investigate despite claiming that her tearing persisted for years on end and offered no reasonable basis for such failure. Her cause of action was "reasonably knowable" to her for many years. *Kryzhanovskyi*, 2024 WL 5010258, at *3. And given her lack of

9

due diligence, Plaintiff cannot now claim that such an investigation would have been futile. *Id.*, at *3 ("[W]hen a plaintiff demonstrates a lack of diligence . . . claiming futility cannot relieve her of her duty to investigate."). Accordingly, her claims remain prescribed as a matter of law.

### D. Even if Applicable, *Contra Non Valentem* Does Not Save Plaintiff's Untimely Suit.

Even if the Court were to apply the doctrine here, *contra non valentem* does not save Plaintiff's untimely claims. Here, Plaintiff suspected her tearing was related to her chemotherapy based on discussions with Dr. Chauvin during her treatment and the fact that she had not previously experienced the issue, and this excessive tearing persisted after chemotherapy, leading her to seek out an eye specialist as early as November 2015. At her April 7, 2016 visit with Dr. Chauvin, Plaintiff again reported persistent tearing which she believed would not resolve on its own. At that point, any tolling ceased, and the prescription period commenced no later than April 7, 2016. She did not file her complaint until June 6, 2022, over *six years* later.

Further, even giving Plaintiff every benefit of the doubt, there can be no dispute that she had constructive knowledge of her claimed docetaxel-associated injuries no later than the date she retained counsel relating to this matter: June 1, 2020. Plaintiff admitted that she contacted and retained her counsel after seeing an online advertisement linking tearing to chemotherapy. Thus, even under an *extremely* lenient interpretation, Plaintiff's claims could be tolled no later than June 1, 2020, and the deadline to file was June 1, 2021. She did not file until over a year later, on June 6, 2022. Thus, her claims remain prescribed even if *contra non valentem* was somehow applicable.

### E. Louisiana's Learned Intermediary Doctrine Precludes Plaintiff's Claims.

Plaintiff's claims are further subject to summary judgment by operation of Louisiana's learned intermediary doctrine because her prescribing oncologist, Dr. Chauvin, would not have changed her prescribing decision and was independently aware of the alleged risks. As an initial

10

matter, Plaintiff alleges both negligence and failure-to-warn claims. However, because Louisiana's Products Liability Act ("LPLA") provides the exclusive remedy available against a prescription drug manufacturer, her state-law negligence claim must be dismissed as a matter of law. *See, e.g.*, *LeBoeuf v. Janssen Pharms., Inc.*, No. CV 16-12419, 2017 WL 175781, at *2 (E.D. La. Jan. 17, 2017) (dismissing state law negligence claims as precluded by the LPLA). Thus, only her state-law failure-to-warn claim remains.

Pursuant to the LPLA, a plaintiff asserting a failure-to-warn claim must prove "(1) a manufacturer's failure to adequately warn the prescribing physician of a risk associated with the product that the physician did not otherwise know about, and (2) that the failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021). Louisiana law requires failure-to-warn claims "be viewed through the lens of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Under the learned-intermediary doctrine, "[a prescription drug] manufacturer has no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).

To satisfy the causation prong, a "plaintiff must show that a proper warning would have changed the decision of the [prescribing] physician, *i.e.*, that but for the inadequate warning, the [prescribing] physician would not have used or prescribed the product." *In re Taxotere*, 994 F.3d at 708 (quoting *Willett*, 929 F.2d at 1099). Where the prescribing physician was independently aware of the risks contemplated by the proposed warning, any allegedly inadequate warning becomes moot and proximate cause fails. *See id.* at 709 (affirming summary judgment where

11

prescriber was independently aware of risk of chemotherapy-induced alopecia, noting it would have "had no effect on [his] prescribing decision, and this supports the conclusion that Sanofi's alleged failure-to-warn could not have been the cause of [plaintiff's] injury."); *Cooper v. Sams*, 628 So. 2d 1181, 1190 (La. Ct. App. 1993) ("[E]ven if Janssen's warnings were inadequate, its failure to warn . . . could not have caused [plaintiff's] injuries here, because Dr. Lewis already knew of those dangers.").

Here, Dr. Chauvin testified that she was independently aware of the risks advanced by Plaintiff's proposed warnings language when she prescribed docetaxel to Plaintiff, including, *inter alia*, the need to refer patients with tearing to ophthalmologists and that docetaxel-related tearing may relate to underlying tear obstruction or blockage that could require surgical treatment. Further and regardless, Dr. Chauvin relied on other sources of information and *not* Accord's label in prescribing docetaxel to Plaintiff. These points sink proximate causation, and thus Plaintiff's failure-to-warn claim. *See In re Taxotere*, 994 F.3d at 709; *Cooper*, 628 So. 2d at 1190; *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 17-5372, 2021 WL 4206936, at *7 (E.D. La. Sept. 16, 2021) (granting summary judgment where prescriber testified "that he never read the [] label before performing [plaintiff's] surgery. Thus, regardless of what warning had been included in the label, Dr. Schwab would not have seen it. Accordingly, [p]laintiff cannot demonstrate that any inadequate warning to Dr. Schwab was a cause in fact or the proximate cause of the injury.").

In addition, and despite being confronted with the warnings language proposed by Plaintiff, Dr. Chauvin was resolute that she would not have changed her prescribing decision.[4] In fact, according to Dr. Chauvin, given Plaintiff's high risk of recurrence and other factors, the docetaxel chemotherapy regimen was the best and *only* treatment option available. Dr. Chauvin affirmed that

---

[4] Further, while the duty to warn runs to the prescribing physician, Plaintiff testified that she trusts Dr. Chauvin and deferred to her judgment in making the prescribing decision. SUMF, ¶ 13.

12

if Plaintiff presented to her today with the same diagnosis, she would recommend *the very same* docetaxel-containing regimen. Since the evidence demonstrates indisputably that Dr. Chauvin would not have done anything differently with respect to prescribing docetaxel to Plaintiff, Plaintiff cannot demonstrate proximate causation on her failure-to-warn claim. *In re Taxotere*, 994 F.3d at 708; *Ferguson v. Proctor & Gamble Pharms., Inc.*, 353 F. Supp. 2d 674, 679 (E.D. La. 2004) ("[B]ecause plaintiffs have not shown that a proper warning would have changed the decision of [the] treating physician, P & G is entitled to summary judgment on plaintiffs' failure-to-warn claim."). Thus, the Court should grant summary judgment in Accord's favor for this additional and independent basis.

## IV.    CONCLUSION

For the reasons set forth herein, Accord Healthcare, Inc. respectfully requests that this Court grant its Motion for Summary Judgment and dismiss these claims in their entirety with prejudice.

DATED: June 16, 2025

                                      */s/ Connor J. Doughty*
                                      Julie A. Callsen
                                      Madeline B. Dennis
                                      Connor J. Doughty
                                      TUCKER ELLIS LLP
                                      950 Main Avenue—Suite 1100
                                      Cleveland, OH 44113-7213
                                      Telephone:  216.696.2286
                                      Facsimile:   216.592.5009
                                      julie.callsen@tuckerellis.com
                                      madeline.dennis@tuckerellis.com
                                      connor.doughty@tuckerellis.com

                                      *Attorneys for Defendant Accord Healthcare, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, a true and correct copy of the *Defendant Accord Healthcare, Inc.'s Memorandum in Support of its Motion for Summary Judgment* was served on all entitled to notice through the Court's ECF filing system.

> */s/ Connor J. Doughty*
> Connor J. Doughty
>
> *One of the Attorneys for Defendant Accord Healthcare, Inc.*