UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 3023<br><br>SECTION "H" (5) |
| THIS DOCUMENT RELATES TO:<br><br>*Marshell Primer*, No. 2:22-cv-03786 | : : : : : | HON. JANE TRICHE MILAZZO<br>MAG. JUDGE MICHAEL NORTH |

### DEFENDANT ACCORD HEALTHCARE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**I.      INTRODUCTION**

Summary judgment in favor of Accord Healthcare Inc. ("Accord") is warranted on all claims asserted by Plaintiff Marshell Primer ("Plaintiff") for two independent reasons. *First*, under penalty of perjury, Plaintiff affirmatively misrepresented to the United States Bankruptcy Court for the Southern District of Mississippi the existence of her impending claims against Accord, even though she retained counsel years before and would file this lawsuit against Accord mere weeks after receiving her Order of Discharge from the Bankruptcy Court. She is judicially estopped from pursuing the instant action as a matter of law because she had a statutory duty to disclose her forthcoming lawsuit to the Bankruptcy Court and failed to do so.

*Second*, Plaintiff's claims against Accord are barred by operation of Mississippi's learned intermediary doctrine. Plaintiff's prescribing oncologist, Dr. Guangzhi Qu, offered unequivocal testimony that he still would have prescribed docetaxel to Plaintiff despite Plaintiff's proposed warnings language, so any alleged failure to warn is moot. Unable to establish proximate cause, Plaintiff's claims against Accord are subject to summary judgment and must be dismissed as a matter of law for this independent reason as well.

**II.    STATEMENT OF FACTS**

Plaintiff is a resident of Goodman, Mississippi. *See* Statement of Undisputed Material Facts ("SUMF"), ¶ 1. On October 18, 2019, Ms. Primer (then 43 years old) was diagnosed with breast cancer. *Id.*, ¶ 2. Her oncologist was – and is – Dr. Guangzhi Qu ("Dr. Qu"), a board-certified medical oncologist and hematologist. *Id.*, ¶ 3. Plaintiff's breast cancer treatment regimen included surgery, radiation, and chemotherapy. *Id.*, ¶ 4. As part of her treatment, Dr. Qu prescribed docetaxel to Plaintiff, which was administered from November 15, 2019, until March 13, 2020. *Id.*, ¶¶ 4–5, 14.

Dr. Qu has prescribed thousands of doses of docetaxel to cancer patients since 2000 and continues to prescribe it regularly. *Id.*, ¶ 5. Dr. Qu testified that he refers to several different sources to make prescribing decisions and manage patient care, including published medical literature, published studies, continuing medical education presentations, textbooks, oncology guidelines, and his own medical training and experience. *Id.*, ¶ 7 (explaining that he wants to ensure that he relies on information that is scientifically supportable). In contrast, Dr. Qu reviewed Sanofi's label for Taxotere when he began prescribing docetaxel in 2000 but has reviewed the drug label only "infrequently" since then. *Id.* ¶ 10. Dr. Qu had never heard of Accord before this lawsuit, never looked to Accord specifically for docetaxel labeling or prescribing information, and could not say whether he had ever read any Accord materials. *Id.*, ¶ 9.

Dr. Qu only prescribes a chemotherapy regimen once he is satisfied that the benefits outweigh the risks. *Id.*, ¶ 13. Specifically, Dr. Qu only prescribed docetaxel to Plaintiff after he was satisfied that the benefits outweighed the risks for her. *Id.* Plaintiff relied upon Dr. Qu to balance the risks and benefits of different chemotherapy options, including docetaxel. *Id.*, ¶ 11.

2

Dr. Qu testified that when he prescribed docetaxel to Plaintiff in 2019, he was independently aware through his training and experience as an oncologist that docetaxel could cause tearing. *Id.*, ¶ 8.

Dr. Qu unequivocally stands behind his decision to prescribe docetaxel to Plaintiff in 2019. *Id.*, ¶ 16. Indeed, he testified that there is ***nothing he would have changed*** about his treatment of Plaintiff, whatsoever, notwithstanding Plaintiff's counsel's questions during his deposition regarding allegedly undisclosed risks associated with excessive tearing. *Id.* Dr. Qu explained that the docetaxel regimen he prescribed was the best option to treat Plaintiff's breast cancer, which was aggressive and at high-risk for recurrence. *Id.*, ¶ 6. In fact, according to Dr. Qu, the docetaxel regimen, which was and is a National Cancer Comprehensive Cancer Network "preferred" regimen, was the *only* chemotherapy treatment option he considered for Plaintiff, given her medical history of cardiac conditions. *Id.* Plaintiff testified that her focus was on living, and forgoing chemotherapy was not a serious option for her. *Id.*, ¶ 12.

Plaintiff alleges that, during her docetaxel-based chemotherapy, she experienced excessive tearing, which continued after her docetaxel treatment concluded. *Id.*, ¶ 15. Plaintiff thereafter learned of a potential legal claim when her sister sent her an online advertisement regarding this litigation. *Id.*, ¶ 17. On December 8, 2020 – less than nine months after completing her docetaxel chemotherapy – she retained counsel for purposes of this lawsuit. *Id.*, ¶ 18. Accordingly, Plaintiff admitted that as of December 8, 2020, she suspected she had a basis to bring a lawsuit related to her persistent tearing. *Id.*, ¶ 19.

Around this time, Plaintiff began to experience financial difficulty related to medical bills not covered by her insurance. *Id.*, ¶ 20. On June 9, 2022, she filed a bankruptcy petition (the "Petition") in the United States Bankruptcy Court for the Southern District of Mississippi ("the Bankruptcy Court"). *Id.* Schedule A/B: Property, Part 3 of the Petition, required Plaintiff to list

3

ownership of any legal or equitable interest in various items. Specifically, in response to Question "33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment (Examples: Accidents, employment disputes, insurance claims, or rights to sue)," she responded "No." *Id.*, ¶ 21.

On September 23, 2022, the Bankruptcy Court entered an Order of Discharge and closed Plaintiff's proceeding by issuing a discharge pursuant to 11 U.S.C. § 727. *Id.*, ¶ 22. Less than three weeks later, on October 10, 2022, Plaintiff filed the instant Complaint against Accord alleging failure to warn and negligence. *Id.*, ¶ 23. She did not amend her Petition to disclose her claims against Accord, nor did she seek to reopen her bankruptcy proceeding to subsequently disclose these claims. *Id.*, ¶ 24.

### III.    ARGUMENT

#### A. Standard of Review

Summary judgment is appropriate where the evidence demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *QBS Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F. 3d 439, 442 (5th Cir. 2009). The movant bears the initial burden of informing the district court of the basis for the motion and identifying record evidence demonstrating the absence of a genuine issue of material fact. *Millet v. Huntington Ingalls Inc.*, No. CIV.A. 13-0934, 2014 WL 5018029, at *1 (E.D. La. Oct. 7, 2014).

Once the movant has satisfied this initial burden, the burden shifts to the non-movant to show that a genuine dispute of material fact does, in fact, exist. *Haley v. Am. Sec. Ins. Co.*, 643 F. Supp. 3d 604, 609 (E.D. La. 2022). A genuine issue of material fact exists only if a reasonable jury could return a verdict for the non-movant. *Id.* While the Court must draw all reasonable inferences in favor of the non-movant, the non-movant cannot survive summary judgment by resting on the

pleadings, conclusory allegations, unsubstantiated assertions, or by the mere existence of a scintilla of evidence. *Id.*

Finally, where the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317 322–23 (1986). So, if the non-movant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to judgment as a matter of law. *Id.* at 323.

### B. Plaintiff's Failure to Disclose her Anticipated Claims Against Accord in her Bankruptcy Petition Warrants Judicial Estoppel.

The Court should grant summary judgment in Accord's favor because Plaintiff is judicially estopped from pursuing her claims based on her conduct during her now discharged bankruptcy proceedings. Plaintiff's failure to comply with her statutory duty to disclose her anticipated claims against Accord in her Petition equates to a representation that no such claims existed or would subsequently be brought. *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004). Accordingly, she is judicially estopped from pursuing those claims here. Judicial estoppel is a common law doctrine intended to prevent litigants from playing "fast and loose" with the courts by taking inconsistent positions in different proceedings. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). In the context of bankruptcy cases, judicial estoppel is particularly important because the bankruptcy system depends on full and honest disclosure by debtors of all assets – without full disclosure, the interests of creditors and the bankruptcy court are impaired. *Id.* at 208.

Under well recognized Fifth Circuit precedent, a court should apply judicial estoppel based on a plaintiff's failure to disclose in bankruptcy if the plaintiff: (1) had a duty to disclose a claim

5

or lawsuit during the pendency of the bankruptcy but failed to do so; (2) takes a position plainly inconsistent with her prior legal position; (3) convinced a court to accept the prior position; and (4) did not act inadvertently. *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *In re Superior Crewboats*, 374 F.3d at 335. Here, each of these requirements is met and Plaintiff is estopped from now bringing her claims against Accord, which should be dismissed.

### 1. **Plaintiff failed to disclose all assets to the Bankruptcy Court by omitting her claims against Accord from her Petition.**

Plaintiff indisputably failed to disclose her known claims against Accord in her Bankruptcy Petition. The Bankruptcy Code imposes an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. *See* 11 U.S.C. § 521(1). The Fifth Circuit has recognized that this includes all the debtor's "known" potential causes of action. *In re Coastal Plains*, 179 F.3d at 207–08 (citing *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D. Tex. 1996)). The debtor need not know all facts or even the legal basis for the cause of action; rather, if the debtor has enough information to suggest that she *may* have a possible claim, that is a "known" cause of action that must be disclosed. *Id.* If a debtor omits a known potential claim from the Petition, and fails to amend it, the debtor may be judicially estopped from later asserting those claims. *Jethroe*, 412 F.3d at 600.

The Fifth Circuit is clear that the duty to disclose known claims in bankruptcy proceedings is ongoing, including as to pending claims. *Id.* ("The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one."); *Allen v. C & H Distrib., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. MDL 16-2740, 2018 WL 5016219, at *5 (E.D. La. Oct. 16, 2018) ("Fifth Circuit precedent mak[es] clear that the duty to disclose claims in bankruptcy proceedings is an ongoing obligation."). In *Jethroe*, the Fifth Circuit affirmed summary judgment based on judicial estoppel because the debtor failed

to disclose pending and unliquidated claims in her bankruptcy proceedings. 412 F.3d at 600 ("Jethroe was under a duty both to disclose the existence of her pending EEOC complaint when she filed her petition and to disclose her potential legal claims throughout the pendency of that petition . . . [a]ccordingly, she was estopped from raising the claims in the district court.").

Here, Plaintiff not only admittedly knew of her potential claims against Accord when she filed her Petition but waited until just a few weeks *after* receiving a discharge to file her Complaint against Accord. Plaintiff testified that she first began to consider a lawsuit after viewing an online advertisement concerning Taxotere®/docetaxel litigation. SUMF, ¶ 17. She then retained counsel in connection with this litigation on December 8, 2020. *Id.*, ¶ 18. Accordingly, Plaintiff testified that at minimum she suspected she had a basis to bring a lawsuit regarding her persistent tearing as of December 8, 2020. *Id.*, ¶ 19. It is indisputable that at that point, she believed a potential cause of action existed. Yet, when she filed her Petition on June 9, 2022, she did not disclose her potential claims against Accord, and in fact affirmatively misrepresented that she had no such claims. *Id.*, ¶¶ 20–21 (answering "No" in response to whether she had any "[c]laims against third parties, *whether or not you have filed a lawsuit or made a demand for payment*.") (emphasis added). Moreover, Plaintiff sat silently by as the bankruptcy process played out, waiting until just seventeen days *after* her September 23, 2022 Order of Discharge to file her Complaint against Accord on October 10, 2022. *Id.*, ¶¶ 22–23. Plaintiff's conduct led the bankruptcy court to discharge her proceedings without knowledge of her looming claims against Accord. It is irrefutable that Plaintiff knew of her forthcoming claims well before the Order of Discharge and disregarded her statutory duty to disclose.

> 2. **Plaintiff has taken inconsistent positions by pursuing the claims she previously represented did not exist.**

Plaintiff has also indisputably taken inconsistent positions as it relates to her claims against Accord. On the one hand, she affirmatively misrepresented the existence of her claims to the Bankruptcy Court by declaring in her sworn Petition that she had no such potential claims and failing to amend it thereafter. *See In re Superior Crewboats*, 374 F.3d at 335 ("[T]he [] omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed."); *In re Coastal Plains*, 179 F.3d 197 ("By omitting the claims from its schedules and stipulation, Coastal represented that none existed."); *Allen*, 813 F.3d at 572 (noting failure to disclose a personal injury claim was an implicit representation that no such claim existed). As far as the Bankruptcy Court and her creditors were aware, there were no such claims on the horizon.

Now, on the other hand, Plaintiff seeks monetary compensation from Accord through these very same "non-existent" claims that she was aware of when she filed her Petition. These blatantly inconsistent positions readily satisfy this prong. *See In re Taxotere*, 2018 WL 5016219 at *5 (finding judicial estoppel, noting plaintiff "took clearly inconsistent positions in these proceedings; she failed to disclose her Taxotere claims to the Bankruptcy Court—even after she filed her Taxotere lawsuit."); *In re Coastal Plains*, 179 F.3d 197 (same); *In re Superior Crewboats*, 374 F.3d at 335 (same).

### 3. The Bankruptcy Court accepted and relied on Plaintiff's misrepresentation and issued an Order of Discharge.

In addition, it is incontrovertible that the Bankruptcy Court relied on Plaintiff's misrepresentation. By omitting her forthcoming claims against Accord, Plaintiff left the Bankruptcy Court in the dark as to those claims. As a result, the Bankruptcy Court closed Ms. Primer's case and issued an Order of Discharge. SUMF, ¶ 22. Granting a discharge is based, at least in part, on the court's assessment of the debtor's assets and liabilities. *Jethroe*, 412 F.3d at

8

600 (finding this prong satisfied); *In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013) (same, noting the "bankruptcy court accepted the prior position by omitting any reference to the personal-injury claim in the modified plan. Had the court been aware of the claim, it may well have altered the plan."); *Allen*, 813 F.3d at 573 (same, noting "the Allens' failure to disclose their personal injury claim led to the bankruptcy court accepting the inconsistent position that there was no such claim."). In determining Plaintiff's entitlement to a discharge, and in ascertaining which assets may be available to her various creditors, the Bankruptcy Court relied on her representation that no forthcoming claims existed.

### 4. **Plaintiff's omission was not inadvertent.**

Finally, Plaintiff's omission was not inadvertent because she admittedly knew she had potential claims against Accord during the bankruptcy proceedings and stood to gain financial benefit by omitting their existence. A debtor's failure to satisfy their statutory duty to disclose is "inadvertent" only where the debtor either lacks knowledge of the undisclosed claim or has no motive for their concealment. *In re Coastal Plains*, 179 F.3d at 210; *Jethroe*, 412 F.3d at 600–01. In the Fifth Circuit, a debtor "lacks knowledge" of an undisclosed claim only where she is unaware of the facts giving rise to the potential cause of action. *Allen*, 813 F.3d at 573 (citing *In re Flugence*, 738 F.3d at 130). A lack of awareness of the statutory duty to disclose is irrelevant. *In re Coastal Plains*, 179 F.3d at 212 (a "claimed lack of awareness of [the] statutory disclosure duty for its claims [] is not relevant."); *Allen* 813 F.3d at 573 ("that the Allens 'did not know that bankruptcy law required disclosure . . . is, according to our precedents, irrelevant.'"); *In re Flugence*, 738 F.3d at 130 ("Her representation that she did not know she had to disclose—and that she relied on the advice of her attorney—is unavailing[.]"). Plaintiff was, by her own admission, aware of the facts giving rise to her instant claims well before filing her Petition, as she retained current counsel over

9

a *year and a half* before filing her Petition. SUMF, ¶¶ 18–19. She readily acknowledged she at least suspected she had a basis to bring a lawsuit related to her tearing at that time. *Id.*, ¶ 19.

Plaintiff's motivation to omit her forthcoming claims against Accord from her Petition is also irrefutable. Her misrepresentation prevented these claims from becoming property of the Bankruptcy Court and available to her creditors. Should Plaintiff succeed in obtaining compensatory damages from Accord here, she stands to reap a financial windfall that she would not have been entitled to had she fulfilled her statutory duty to disclose. The Fifth Circuit is clear: a debtor possesses the requisite motivation to conceal if omitting the claim would allow her "to recover on the undisclosed claim without having disclosed it to creditors." *In re Crewboats*, 374 F.3d at 336; *see also In re Taxotere*, 2018 WL 5016219, at *5 ("The motivation to conceal exists because [plaintiff] would have reaped a windfall if she had been able to pursue this claim and collect a judgment from Accord without having to share the judgment with her creditors."); *Allen*, 813 F.3d at 574 ("[T]he 'potential financial benefit resulting from the nondisclosure' makes the motivation in this context self-evident."). Thus, this final prong is also established, and Accord is entitled to summary judgment in its favor based on judicial estoppel.

### C. Accord is Entitled to Summary Judgment on Plaintiff's Claims under Mississippi's Learned Intermediary Doctrine For Lack of Proximate Causation.

Plaintiff's claims are also subject to summary judgment by operation of Mississippi's learned intermediary doctrine because her prescribing oncologist, Dr. Qu, testified that he still would have prescribed docetaxel to her in 2019 even had he been presented with the alleged warnings information that Plaintiff contends should have been in the label. Under either her negligence or failure to warn claim, Plaintiff must prove proximate cause – *i.e.*, that an alleged inadequacy in Accord's labeling was the proximate cause of her injuries. *Wyeth Lab'ys, Inc. v.*

*Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) (failure to warn); *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 808 n.1 (5th Cir. 1992) ("We consider both the negligence and the strict liability action together.").[1] Because Mississippi's learned intermediary doctrine applies to cases involving prescription drugs, Accord's duty to warn was to her prescribing physician, and not to the patient, Ms. Primer. *Wyeth Lab'ys*, 530 So.2d at 691 (explaining "where prescription drugs are concerned, a manufacturer's duty to warn only extends to physicians and not to laymen.") (quoting *Swayze v. McNeil Laboratories, Inc.*, 807 F.2d 464 (5th Cir. 1987)).

Mississippi law requires Plaintiff to make two, separate showings, by a preponderance of evidence, that (1) the warning given by Accord was inadequate *and* (2) an adequate warning would have altered her prescriber's decision. *See Wyeth Lab'ys*, 530 S.2d at 691 ("Assuming arguendo that the warning was inadequate, Fortenberry still had the burden of showing that an adequate warning would have altered Dr. Moore's conduct."); *Lim v. Ethicon, Inc.*, 519 F. Supp. 3d 380, 387 (S.D. Miss. 2021) ("Even assuming Defendants' warnings to Dr. Seago were inadequate, Lim has 'the burden of showing that an adequate warning would have altered [Dr. Seago's] conduct.'") (quoting *Wyeth Lab'ys*, 530 S.2d at 691); *Thomas*, 949 F.2d at 814 ("The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.").

---

[1] Plaintiff's negligence claim is a repackaged failure-to-warn claim, swept within the confines of the Mississippi Product Liability Act, and is likewise subject to the learned intermediary doctrine. *See* Master 505(b)(2) Compl., ¶ 130 (alleging breach for placing docetaxel into commerce "without adequate and/or proper warning[.]"); *see also Hill v. Forest Lab'ys, Inc.*, No. 2:06-CV-244-KS-MTP, 2014 WL 2558756, at *2 (S.D. Miss. June 6, 2014) (dismissing ancillary negligence claim for purported failure to warn of alleged association between Lexapro and suicide as "plainly a product liability claim within the scope of the MPLA."); Miss. Code § 11-1-63 (applying the learned intermediary doctrine to "any action based on a theory of strict liability in tort[ or] negligence," alleging failure to warn in the context of a prescription drug).

11

Plaintiff's inability to show the latter eliminates her ability to establish an essential element of her claims, entitling Accord to summary judgment.

Plaintiff's prescribing oncologist, Dr. Qu, was unequivocal: he would not have changed his prescribing decision despite all that Ms. Primer's counsel presented to him regarding the alleged warnings. *See* SUMF, ¶¶ 16 ("A. **So with all the information offered today, I would not have changed anything that I have treated -- the way I treated Ms. Primer.**") (emphasis added), ("A. Even based on the literature, you know, you provided, she has the worst eye tearing, that regimen [would] still be the regimen she would receive. If I'm sitting here today knowing that she's going to run into a problem -- an eye problem, hindsight is always 20/20, I would still recommend the same thing."), ("Q: I -- in other words, you haven't been shown any evidence today that would have changed your treatment of Ms. Primer [,] correct? A. If I treated her -- Ms. Primer today with -- with her similar kind of cancer, I would have done the same thing."). In fact, given the aggressive nature of Plaintiff's cancer and her pre-existing medical history, the chemotherapy regimen Dr. Qu prescribed was the *only* treatment option available. *Id.*, ¶ 6. In short, there is no evidence whatsoever that a different warning would have influenced Dr. Qu. This forecloses any possibility of recovery on Plaintiff's claims.

Where, as here, the prescriber's decision would remain the same even in light of the proposed warning, proximate causation simply cannot be established. *See Lim*, 519 F.Supp.3d at 387–88 (granting summary judgment where prescriber testified "he would not have changed his decision" even with the proposed warning); *Windham v. Wyeth Lab'ys, Inc.*, 786 F. Supp. 607, 613 (S.D. Miss. 1992) ("Plaintiffs have failed to show that a more thorough or more explicit warning . . . would have altered Dr. Gillespie's decision to prescribe []. Absent such proof, Plaintiffs cannot establish that any failure to warn on the part of Wyeth was the proximate cause of their injuries.");

*Thomas*, 949 F.2d at 818 ("The plaintiff must show that an adequate warning would have convinced the prescribing physician not to prescribe the drug for the plaintiff. No reasonable jury could conclude that Dr. Myers would not have prescribed Accutane for Thomas."). Dr. Qu's testimony establishes that he would not have changed anything about his care of and treatment of Plaintiff. As such, Plaintiff cannot meet her burden to produce evidence of proximate cause, and Accord is entitled to summary judgment.

Dr. Qu also testified that he refers to several different sources to make prescribing decisions and manage patient care, including published medical studies, textbooks, continuing education, professional guidelines, and clinical experience. *See* SUMF, ¶ 7. In contrast, since Dr. Qu initially reviewed Sanofi's Taxotere label in 2000, he has reviewed the Taxotere/docetaxel label "infrequently." *Id.*, ¶ 10. In fact, Dr. Qu was unsure that he had *ever* seen *Accord's* materials. *Id.*, ¶ 9 (noting that he never looked to Accord specifically for label information, and that he was unsure whether he had ever read Accord's label). Further, Dr. Qu testified that when he prescribed Plaintiff's docetaxel, he was independently aware of the risk of tearing and the fact that chemotherapy side effects can persist. *Id.*, ¶ 8. He also knew from his training and experience to refer patients to specialists for treatment of side effects. *Id.*, ¶ 8. Once again, proximate cause does not exist under these facts. *See, e.g.*, *Lim*, 519 F. Supp. 3d at 387 (finding lack of proximate cause, in part, where physician testified that he was aware of the risks associated with device and "the documentation provided by Defendants . . . is not something he would typically consult before implanting the device into a patient and that he had not become familiar with the documentation" before the subject patient).

In sum, Plaintiff's claims cannot survive summary judgment because the record is devoid of any evidence that a different warning would have altered her oncologist's prescribing decision. Thus, summary judgment in Accord's favor is warranted for this additional independent reason.

## IV. CONCLUSION

For the reasons set forth herein, Accord Healthcare, Inc. respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety with prejudice.

DATED: June 16, 2025

                                        */s/ Connor J. Doughty*
                                        Julie A. Callsen
                                        Madeline B. Dennis
                                        Connor J. Doughty
                                        TUCKER ELLIS LLP
                                        950 Main Avenue—Suite 1100
                                        Cleveland, OH 44113-7213
                                        Telephone:   216.696.2286
                                        Facsimile:    216.592.5009
                                        julie.callsen@tuckerellis.com
                                        madeline.dennis@tuckerellis.com
                                        connor.doughty@tuckerellis.com

                                        *Attorneys for Defendant Accord Healthcare, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, a true and correct copy of the *Defendant Accord Healthcare, Inc.'s Memorandum in Support of its Motion for Summary Judgment* was served upon the following through the Court's ECF filing system.

*/s/ Connor J. Doughty*
Connor J. Doughty

*One of the Attorneys for Defendant Accord Healthcare, Inc.*