**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In Re: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION** | **MDL NO. 3023** |
| **THIS DOCUMENT RELATES TO:** Juanita Anderson, Case No. 2:22-cv-04751 | **SECTION "H" (5)** |

**DEFENDANTS SANOFI US SERVICES INC. AND SANOFI-AVENTIS U.S. LLC'S**
**MEMORANDUM IN SUPPORT OF THEIR**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**INTRODUCTION**

Defendants Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC ("Sanofi") are entitled to summary judgment on Plaintiff Juanita Anderson's claims for two reasons.

*First*, Ms. Anderson's claims are time-barred under Louisiana law. A one-year prescriptive period applies to Ms. Anderson's product-liability claims, and this period began when Ms. Anderson sustained her injury—i.e., in September 2013 when Ms. Anderson alleges she experienced her injury of epiphora. Because Ms. Anderson did not file her lawsuit until December 2022, her lawsuit is prescribed unless she can demonstrate that the equitable tolling doctrine of *contra non valentem* applied to toll the prescriptive period for more than eight years. She cannot. For tolling to apply, Louisiana law requires a plaintiff to exercise reasonable diligence in attempting to discover her cause of action. Here, Ms. Anderson knew from the beginning that her tearing was caused by chemotherapy, but she did not do anything to research her injury for eight years, including raising the issue with her eye doctor, whom she visited several times. The first time she consulted a doctor about her condition was in December 2021 at the direction of her attorneys. Had she inquired, she would have discovered the medical literature she cites in her own Master Complaint, which publicized a potential link between Taxotere and tear duct stenosis in the early 2000s. Because she had notice of her cause of action in September 2013, tolling does not apply and her claims expired in 2014.

Regardless, even if Ms. Anderson claims she did not have notice at the time of her injury in 2013, she certainly had notice of her cause of action *no later* than November 2020, by which time it is undisputed that she thought she had a claim, had hired attorneys to pursue her rights, and had signed documents authorizing her attorneys to obtain her medical records. Since she knew she had a legal claim as of November 2020, the prescriptive period ran no later than November 2021. The Court should dismiss Ms. Anderson's untimely claims.

2

*Second*, Ms. Anderson cannot establish the causation element of her claims because, under the learned intermediary doctrine, she cannot show that her preferred warning would have changed the prescribing decision of her oncologist, Dr. Burton. Dr. Burton does not look at package inserts to learn about drug side effects, and he has never read the Taxotere package insert. Consequently, inclusion of Ms. Anderson's preferred warning in the insert could not have changed Dr. Burton's prescribing decision because there is no evidence he would have seen it. Moreover, even if Dr. Burton *had* read the Taxotere package insert, the outcome would be no different. Dr. Burton testified that Ms. Anderson's suggested warnings did not tell him anything he did not already know before 2013; would not have materially altered his risk-benefit assessment of Taxotere for her; and would not have caused him to prescribe to Ms. Anderson a chemotherapy other than Taxotere. Indeed, Dr. Burton stands by his decision to prescribe a Taxotere-containing regimen to Ms. Anderson, and, if he could go back to 2013, he would make the same prescribing decision. Because Ms. Anderson has no evidence of causation under the learned intermediary doctrine, the Court should enter summary judgment on this basis, too.

## LEGAL STANDARD

The Court must enter summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears an initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party can meet this burden by pointing out that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id*. at 322–23. Once the moving party has met its burden, the nonmoving party bears the burden of coming forward with evidence of each element of its claim, such that a reasonable jury could find in its favor. *Id.* The existence of a mere scintilla of evidence to support the nonmoving

party's position, however, will not defeat summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Without sufficient evidence on an essential element, summary judgment is warranted.

## ARGUMENT

**I.    MS. ANDERSON'S CLAIMS FAIL BECAUSE THEY ARE TIME-BARRED.**

In Louisiana, "[d]elictual actions are subject to a liberative prescription of one year," with the prescription period running "from the day injury or damage is sustained." La. Civ. Code. art. 3492.[1] The one-year prescription period applies to Ms. Anderson's product-liability claims. *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux II)*, 995 F.3d 384, 388 (5th Cir. 2021) ("Louisiana law provides a one-year liberative prescription period for products-liability cases." (citing La. Civ. Code. art. 3492)).[2] Because Ms. Anderson alleges that she began experiencing epiphora immediately after beginning chemotherapy in September 2013, SUF ¶ 23, the prescription period began to run in September 2013, and the prescription period expired on October 1, 2014 (at the latest), which is more than eight years before she filed her complaint on December 2, 2022, *id.* ¶ 30. Ms. Anderson's claims are therefore prescribed unless she can show that they are tolled under Louisiana's equitable tolling doctrine, *contra non valentem agere non currit praescriptio*.

---

[1]    In 2024, Article 3492 was replaced by an otherwise identical statute providing for a liberative prescription of two years. *See* 2024 La. Acts 423 (H.B. 315). The two-year period, however, was "given prospective application only" and applies only to claims "arising" after July 1, 2024, the statute's effective date. *Id*. Ms. Anderson's claims arise from her 2013 treatment with Taxotere, so the one-year prescription applies.

[2]    Although Ms. Anderson's complaint alleges Strict Products Liability-Failure to Warn and Negligence, *see* Sanofi's Statement of Undisputed Facts in Support of Motion for Summary Judgment ("SUF") ¶ 38, her claims are subsumed by the Louisiana Products Liability Act, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products." *See* La. Stat. Ann. § 2800.52. Of the theories available under the LPLA, Plaintiffs have only come forward with evidence to support a warnings claim. To the extent any of the factual allegations in the Master Complaint could be construed as stating a claim for unreasonably dangerous construction, design, or nonconformity with an express warranty, those claims are subject to summary judgment for lack of evidence.

4

*Contra non valentem* does not toll the prescriptive period on this record. *Contra non valentem* tolls prescription in four "exceptional circumstances":

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*In re Taxotere (Docetaxel) Prods. Liab. Litig. (Hughes)*, No. 17-11769, 2021 WL 6201313, at *1 (E.D. La. Apr. 28, 2021) (second alteration in the original) (quoting *Thibodeaux II*, 995 F.3d at 390). None apply here. The first two exceptions are plainly inapplicable because there is no evidence that any legal impediment prevented the courts from hearing Ms. Anderson's claims, and her claims are not tied to any contract or proceeding that prevented her from availing herself of her cause of action.

The other *contra non valentem* categories are also unavailable because Ms. Anderson was on inquiry notice of her claims more than one year before she filed her lawsuit in in December 2022. Had she shown ordinary diligence, she would have discovered her injury shortly after she sustained it in 2013. And even if she did not have inquiry notice at that point, she certainly did in November 2020, by which time it is undisputed that she thought she had a claim and had hired attorneys to pursue her rights in this case.

### A. *Contra non valentem* does not apply because Ms. Anderson failed to act with reasonable diligence in pursuing her claims.

"Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury." *Thibodeaux II*, 995 F.3d at 392. "The duty to act requires an investigation of the injury." *Id.* "Accordingly, to toll prescription, a plaintiff who suspects that something is wrong

5

must act reasonably to discover the cause of the problem; otherwise, contra non valentem will not apply." *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux I)*, No. 16-15859, 2020 WL 8257755, at *2 (E.D. La. Jan. 23, 2020), *aff'd*, 995 F.3d 384 (5th Cir. 2021). In *Thibodeaux*, this Court held that the plaintiff had not acted with the requisite diligence because, although she always attributed her injury (hair loss) to chemotherapy, she did nothing to discover the cause of the problem. *Id.* at *3. She also never raised her hair loss with her dermatologists even though she had visited her dermatologist several times on unrelated matters. *Id.*

Here, Ms. Anderson has likewise always attributed her injury (tearing) to chemotherapy. SUF ¶ 31. Ms. Anderson has experienced excessive tearing all day every day since her chemotherapy, and the tearing is so pronounced that she must carry tissues with her, and her family sometimes asks her why she is crying. *Id.* ¶¶ 23–25. Nevertheless, like Ms. Thibodeaux, Ms. Anderson did nothing to further investigate the cause. *Id.* ¶ 30. Also like Ms. Thibodeaux, who failed to bring up her hair loss to her dermatologist, Ms. Anderson never raised the issue with any of her eye doctors, even though she visited them several times. *Id.* ¶ 32–33. Rather, Ms. Anderson did not consult with a doctor about her excessive tearing until 2021 at the direction of her attorneys. *Id.* ¶¶ 34–35. Had Ms. Anderson acted with reasonable diligence, she would have discovered the medical literature cited in her own Master Complaint, which identified a potential link between Taxotere and stenosis in the early 2000s. *Id.* ¶ 36. Because reasonable diligence would have alerted Ms. Anderson that Taxotere was potentially the cause of her injury when she sustained it in September 2013, *contra non valentem* does not operate to toll the prescription period. *See Thibodeaux II*, 995 F.3d at 393 ("The master complaint helps us determine what a reasonable inquiry would have uncovered. Appellants are charged with whatever information that is.").[3]

---

[3] Ms. Anderson's claims are not saved by her testimony that she mentioned her tearing to Dr. Burton's physician's assistant, Andrea Breaux, after receiving her second infusion on October 31, 2013, and that Ms. Breaux said

### B. Ms. Anderson had inquiry notice of her claims no later than November 2020 by which time she thought she had a legal claim and had hired counsel.

Even if Ms. Anderson did not have notice of her claims shortly after sustaining her injury in 2013 (she did), she certainly had notice of her claims no later than November 23, 2020. Because prescription runs "from the time there is notice enough to call for *inquiry* about a claim," *Thibodeaux II*, 995 F.3d at 391 (emphasis in original), and because one way to "inquire about a claim" is to retain legal counsel, "Louisiana courts have routinely held that the act of consulting or retaining an attorney is sufficient to demonstrate that a plaintiff had proper knowledge of an injury, thereby initiating the prescriptive period." *McLaughlin v. GlaxoSmithKline, LLC*, No. CIV.A. 12-2946, 2014 WL 2200868, at *3 (W.D. La. May 27, 2014) (collecting cases), *aff'd sub nom. McLaughlin v. GlaxoSmithKline, L.L.C.*, 601 F. App'x 312 (5th Cir. 2015); *see also In re Med. Rev. Panel Proc. of Williams v. Lewis*, 17 So. 3d 26, 30 (La. Ct. App. 2009) (affirming dismissal of malpractice claim on the grounds that the plaintiffs' initial consultation with an attorney started the prescription period).

Here, Ms. Anderson had sufficient constructive or actual notice because she was aware of her claim—indeed, she had hired her counsel in this case—more than one year before filing her lawsuit. On November 23, 2020, Ms. Anderson signed authorization forms to release her medical records to her counsel, which Ms. Anderson's counsel submitted to LSU Ochsner Medical two

---

"that's just one of the side effects that's going to go away." Ex. C, Feb. 4, 2025 Anderson Dep. 149:10–20. Even if the Court takes this testimony as true—there is no record of it in Ms. Anderson's medical records—Ms. Breaux's statement would not toll the prescription period for two reasons. First, Ms. Breaux did not tell Ms. Anderson that her tearing was caused by "anything other than chemotherapy." *See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Plaisance)*, No. 18-8086, 2022 WL 644166, at *4 (E.D. La. Feb. 22, 2022). Second, Ms. Breaux's statement came while treatment was ongoing, so it cannot excuse Ms. Anderson's failure to raise the issue again when her tearing persisted after her treatment was complete. *See id.* ("Dr. Chauvin's comment cannot serve as a basis for tolling prescription because it occurred in May 2014, merely two months after completing chemotherapy.").

7

days later.  SUF ¶¶ 26–27.  As Ms. Anderson testified, she was already aware of her claim at this time.

> Q  Okay. So, when you signed this as of November 23rd, 2020, you had already contacted the Hotze Runkle Law Firm, correct?
>
> A  Yes.
>
> Q  You had already hired them, correct?
>
> A  Yes.
>
> Q  And you already thought that you had a legal claim at that point, correct?
>
> A  Yes.

*Id.* ¶¶ 28–29 (objection omitted).  Under Louisiana law, the one-year prescription period began to run no later than November 23, 2020, and Ms. Anderson was required to file her lawsuit no later than November 23, 2021.  Because Ms. Anderson did not file her lawsuit until December 2, 2022, *id.* ¶ 30, her claims are untimely and must be dismissed.

## II.   MS. ANDERSON'S CLAIMS FAIL BECAUSE SHE CANNOT ESTABLISH WARNINGS CAUSATION.

This Court should also enter judgment for Sanofi as a matter of law because Ms. Anderson has no evidence that her preferred warning would have changed the decision of her oncologist, Dr. Burton, to prescribe Taxotere.  A warnings claim "must be viewed through the lens of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001).  Under the learned-intermediary doctrine, "[a prescription drug] manufacturer has no duty to warn the patient, but need only warn the patient's physician," *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991), because the physician "acts as an informed intermediary between the drug company and the patient[,]" *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Phillips)*, 994 F.3d 704, 708 (5th Cir. 2021).

Because a drug manufacturer's duty to warn runs only to the physician, warnings causation turns on "the prescribing physician's decision to prescribe the drug." *Id*. at 709. As the Fifth Circuit has explained, a plaintiff must prove both: "(1) a manufacturer's failure to adequately warn the prescribing physician of a risk associated with the product *that the physician did not otherwise know about*, and (2) that the failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury." *Id*. at 708 (emphasis added); *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265–66 (5th Cir. 2002). The undisputed record shows that Ms. Anderson cannot satisfy either requirement.

### A.  The allegedly inadequate warning could not have caused Ms. Anderson's injury because Dr. Burton already knew of the risk associated with Taxotere.

In *Phillips*, the Fifth Circuit held that, under Louisiana law, the focus of a warnings causation analysis is solely on the physician's decision to prescribe the drug at issue. *Phillips*, 994 F.3d at 709 ("[T]o the extent that patient choice is relevant, that relevance is cabined to helping [the Court] decide whether . . . [the doctor's] prescribing decision would have been different had *he* known that Taxotere's associated risk of alopecia was potentially permanent rather than temporary."). The Fifth Circuit rejected the plaintiff's argument that the inquiry should focus on "how patient choice . . . would have steered the conversation" as without support under Louisiana law. *Id*. at 708, 709 n.4. Accordingly, when a prescribing physician testifies that he or she was aware of the allegedly non-disclosed risk and an additional warning would not have materially altered the physician's risk-benefit decision for the drug, a plaintiff cannot avoid summary judgment by claiming she would have chosen a different medicine had she known of the risk. *Id*. at 708–09.

Such is the case here. Ms. Anderson's regulatory expert asserts that Sanofi should have changed its label to warn that "[s]tenosis of the nasolacrimal drainage system that may require

9

surgical intervention has been reported in patients treated with Taxotere" and that there was a risk of "[e]xcessive tearing attributable to potentially permanent stenosis to the nasolacrimal drainage system requiring surgical intervention." SUF ¶ 9. But Dr. Burton testified that these warnings (1) would not have materially altered his risk/benefit assessment of Taxotere; and (2) did not tell him anything he did not already know before 2013. *Id.* ¶¶ 10, 12, 13, 15. As the learned intermediary, Dr. Burton's awareness of the risk before 2013 makes it impossible, as a matter of law, for Ms. Anderson to establish that Sanofi's alleged failure to warn Dr. Burton caused her harm. *Phillips*, 994 F.3d at 709 (Because the learned intermediary knew of the side effect of alopecia associated with Taxotere, "Sanofi's alleged failure-to-warn could not have been the cause of Phillips's injury."). Consequently, the Court should enter summary judgment for Sanofi. *See Cooper v. Sams*, 628 So. 2d 1181, 1190 (La. App. 3 Cir. 1993), *writ denied*, 632 So. 2d 766 (La. 1994), and *writ denied*, 632 So. 2d 767 (La. 1994) (affirming summary judgment where a failure to warn "could not have caused [a patient's] injuries . . . because [*the prescribing physician*] already knew of those dangers" (cited by *Phillips*, 994 F.3d at 709)).

> **B.    A different warning would not have changed Dr. Burton's decision to prescribe Taxotere to Ms. Anderson.**

Ms. Anderson is also unable to satisfy the second prong of the learned intermediary test, which requires her to establish that Sanofi's allegedly inadequate warning was a cause in fact and the proximate cause of her injury. *See Taxotere (Docetaxel) Prods. Liab. Litig. (Guilbaut)*, No. 16-17061, 2022 WL 245605, at *2 (E.D. La. Jan. 11, 2022). With regard to the second prong, "the law is well established that, to prove causation, 'the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product.'" *Id.* (quoting *Willett*, 929 F.2d at 1099). The undisputed facts preclude such a showing here for two independent reasons.

10

First, Dr. Burton has never read the package insert for Taxotere. SUF ¶ 7. To show that an alternative warning would have changed the treating physician's prescribing decision, it is axiomatic that a plaintiff must be able to show that the treating physician would have seen the warning in question. *See Guilbaut*, 2022 WL 245605 at *2–3 (granting summary judgment on learned intermediary grounds where the treating physician could not recall reading the drug's warning label). Here, it is undisputed that Dr. Burton never read the Taxotere package insert, so there is no evidence he would ever have seen Ms. Anderson's preferred warning.[4]

Second, even if Dr. Burton had read the Taxotere package insert, Ms. Anderson cannot show that an alternative warning would have changed his prescribing decision. This was Ms. Anderson's second cancer diagnosis. SUF ¶ 1. And, as Dr. Burton explained, he prescribed a Taxotere-containing "TC" chemotherapy regimen because, given Ms. Anderson's diagnosis, it presented the best benefit-to-risk ratio as compared to alternate treatment options, all of which contained Adriamycin. SUF ¶¶ 4, 6. Although he considered Adriamycin-containing regimens to be potential alternatives, Dr. Burton testified that he would not have prescribed an Adriamycin alternative for Ms. Anderson, even if she had explicitly asked for one, because such a regimen's benefits would not have justified the additional risks. *Id.* ¶ 5.

Dr. Burton further testified that his decision would have been the same even if he had received Ms. Anderson's preferred warnings:

> Q. Doctor, I'm going to ask you a question about a hypothetical and hypothetical language with respect to risk of Taxotere use, and then I'm going to ask you a question that follows.
>
> So if you were told prior to 2013 of a risk associated with Taxotere of excessive tearing attributable to potentially permanent stenosis to the nasolacrimal drainage system

---

[4] Had Dr. Burton read the package insert, which warned of the potential for "lacrimal duct obstruction," there is also no evidence that he would have found the warning confusing. Dr. Burton testified that he understood the term "lacrimal duct obstruction" as warning about the risk of partial or total blockage within the tear duct system that could be permanent and irreversible. SUF ¶ 8.

11

> requiring surgical intervention, if that was the language that you were told . . . . Would that language have caused you not to prescribe Taxotere to Ms. Anderson?
>
> A. No.
>
> . . . .
>
> Q. If you were told prior to 2013, with respect to the risk of Taxotere, of stenosis of the nasolacrimal drainage system that may require surgical intervention has been reported in patients treated with Taxotere . . . . [w]ould that language have caused you not to prescribe Taxotere to Ms. Anderson?
>
> A. No.

SUF ¶¶ 11, 14 (objections omitted). Given this testimony, it is unsurprising that Dr. Burton was unequivocal that he stands by his decision to prescribe Taxotere to Ms. Anderson in 2013:

> Q. Doctor, do you stand by the decision to prescribe TC to Ms. Anderson?
>
> A. Yes.
>
> Q. And if you could go back to 2013 and do it all over again with the options available in 2013, would you make the same decision to treat Ms. Anderson with TC?
>
> A. Yes.

*Id.* ¶¶ 16–17.

Dr. Burton's testimony places this case on all fours with *Phillips*, where the oncologist likewise testified that he would not have prescribed an alternative, anthracycline-containing regimen, even if that plaintiff had requested it. *See Phillips*, 994 F.3d at 709. Because Dr. Burton would have prescribed the same Taxotere-containing regimen even if he had been given Ms. Anderson's preferred warning, Ms. Anderson cannot establish the essential element of warnings causation and Sanofi is entitled to judgment. *See id.*

    **C.**    **There is no "patient choice" issue to consider here.**

Ms. Anderson cannot avoid the learned intermediary doctrine by claiming that *she* would have made a different treatment decision had *she* been warned about the risk of excessive tearing.

To the extent a patient's preferences are relevant to the learned-intermediary analysis, the Fifth Circuit has clarified that this relevance is limited to "helping [the Court] decide whether [the] evidence . . . is sufficient to introduce a genuine dispute of material fact as to whether [the doctor's] prescribing decision would have been different" had *the doctor* (as opposed to the patient) known of the drug's alleged additional risks. *Phillips*, 994 F.3d at 709. Here, that possibility is foreclosed by Dr. Burton's testimony that (1) he already know of the alleged risk, SUF ¶¶ 12, 15, and (2), his prescription decision would not have changed even if Ms. Anderson had expressed concerns about the risk of tear duct obstruction or excessive tearing with Taxotere, *id.* ¶ 18.

Even without Dr. Burton's testimony, however, Ms. Anderson's claims would still fail. For patient preference to defeat the learned intermediary doctrine, a plaintiff must come forward with evidence that the plaintiff "might have steered the conversation in such a way that [the prescriber] would have changed his prescribing decision" had the prescriber known of the allegedly unwarned of risk.[5] *Phillips*, 994 F.3d at 710. In *Phillips*, the Fifth Circuit concluded that the plaintiff did not meet this standard because the oncologist presented a single treatment plan, and the plaintiff "'put her faith in [him],' and consented to treatment." *Id*.

Here, like the doctor in *Phillips*, Dr. Burton believed the Taxotere-containing regimen to be the only regimen appropriate for Ms. Anderson, and Ms. Anderson testified that she relied on her doctors to make treatment decisions: "Whatever they thought was the best, that's what [she] would have accepted." SUF ¶¶ 4–5, 21–22. Because there is not even a "scintilla of evidence" that Ms. Anderson would have "steered the conversation" in a way that caused Dr. Burton to

---

[5] To the extent Ms. Anderson would argue that she might have declined treatment altogether had she received a different warning, that avenue is foreclosed by her testimony that she never considered declining chemotherapy and no potential side effect would have caused her to do so. SUF ¶¶ 19–20.

change his prescribing decision, the learned intermediary doctrine applies, and Ms. Anderson's claims are barred. *See Phillips*, 994 F.3d at 710.

## CONCLUSION

For these reasons, Sanofi requests the Court grant its motion for summary judgment on all of Ms. Anderson's claims.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
hratliff@shb.com
jstrongman@shb.com

***Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*