# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION | MDL NO. 3023 <br><br> SECTION "H" (5) <br><br> HON. JANE T. MILAZZO |
| **This Document Relates to:** <br><br> *Primer v. Accord Healthcare, Inc.* <br> Case No. 2:22-cv-03786 | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Accord Healthcare, Inc. ("Accord"), based on assumptions and rank speculation, resorts to accusing Plaintiff Marshell Primer of criminal bankruptcy fraud to avoid liability in this case. The accusation is egregiously wrong and wildly improper. This Court should not countenance such behavior. Ms. Primer was forced to file bankruptcy due in large part to her cancer and while suffering side effects that could have been avoided had Accord properly labeled its docetaxel product. The timing of her bankruptcy filing provides no basis to dismiss her claims.

Further, the fact that Ms. Primer's physician allegedly testified he would still have prescribed docetaxel had Accord provided an adequate warning is not a basis for dismissal under the learned intermediary doctrine. The basis of Ms. Primer's claim is <u>not</u> that she never should have been prescribed docetaxel but, rather, that her oncologist's *conduct*, i.e. prompt referral to a specialist, would have been different if Accord had properly warned him.

Accord's motion for summary judgment should be denied in full.

**STANDARD OF REVIEW**

Summary judgment may not be granted unless the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021); *see also RDS Real Est., LLC v. Abrams Grp. Constr., LLC*, 2016 WL 4926193, *2 (S.D. Miss. Sept. 15) ("The burden to prove judicial estoppel is on the party invoking the doctrine."); Fed. R. Civ. P. 8 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … *estoppel."*) (emphasis added). If the movant fails to establish all the essential elements of its affirmative defenses, summary judgment must be denied "regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). When there is evidence that a "reasonable jury could return a verdict for the non-moving party," there is a genuine issue of material fact. *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000).

If the movant meets its heavy burden, the nonmovant then must merely "direct the court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist." *Thibodeaux v. Wellmate*, 190 F. Supp. 3d 566, 570 (E.D. La. 2016). The Court must view the evidence in the light most favorable to the nonmoving party and all that is required is "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

**ADDITIONAL STATEMENT OF FACTS**

Ms. Primer was diagnosed with HER2 positive breast cancer in October 2019, and she started chemotherapy treatment, a combination of docetaxel, carboplatin, herceptin, and perjeta, with kadcyla used sequentially, in November 2019. SOF at ¶¶ 2-3. Approximately one month into her docetaxel treatment, Ms. Primer began to experience tearing symptoms, including blurred vision, visual impairment, light sensitivity, eye grittiness, and eventually eye irritation. SOF ¶ 4. Ms. Primer informed her nurses and prescribing physician who only suggested, at best, that it *could* be related to her docetaxel treatment. SOF at ¶ 5. At no point during docetaxel treatment did Ms. Primer receive any referrals to ophthalmologists and/or oculoplastic surgeons to get further examinations of her eyes and/or nasolacrimal system. SOF at ¶ 6.

In June 2020, Ms. Primer first inquired about the current litigation brought against defendant manufacturers. SOF at ¶ 18. In December 2020, Ms. Primer retained counsel for a potential claim that was subject to further investigation, including medical analysis and defendant identification. SOF at ¶ 19. From December 2020 until October 2022, Ms. Primer continued to schedule multiple eye examinations and speak to multiple ophthalmologists and/or oculoplastic surgeons. *See* SOF ¶ 20. Also, throughout this time, Ms. Primer's counsel requested and reviewed her medical records to determine if Ms. Primer had a viable claim through proper diagnoses. *See id.*

Moreover, Ms. Primer continued her breast cancer treatment, including surgery. SOF at ¶ 22. In June 2022, Ms. Primer became overwhelmed with her medical debt stemming from her breast cancer treatment and filed for chapter 7 bankruptcy. SOF at ¶ 24. Ms. Primer's bankruptcy petition listed assets of $28,100, within the "$0-$50,000" asset bracket. SOF at ¶ 26. Ms. Primer also disclosed $63,971 in liabilities within the bankruptcy court's "$50,000-$100,000" liability bracket. SOF at ¶ 27. Specifically, Ms. Primer disclosed two vehicles valued at $12,000 each, which

comprised $24,000 of her $28,100 in assets. SOF at ¶ 28. The bankruptcy court issued a discharge of liabilities equaling $63,971 on September 23, 2022. SOF at ¶ 36.

After her discharge, Plaintiff's counsel analyzed additional medical information in October 2022 that confirmed Ms. Primer's injury and that validated her claim that her injury was likely due to her treatment with docetaxel. SOF ¶¶ 36-38; *see also id.* at Ex. 3, ¶¶ 10-11. Ms. Primer's claim was filed shortly thereafter on October 10, 2022. SOF at ¶ 38.

## ARGUMENT

### I. Ms. Primer Did Not Commit Bankruptcy Fraud

Ms. Primer did not have knowledge of all of the facts that could give rise to a potential claim at the time she disclosed her assets in her bankruptcy case and therefore is not judicially estopped from pursuing her claims here. Moreover, Ms. Primer's position is not clearly inconsistent with her previous claims and her non-disclosure of any potential claim was, at the very least, inadvertent. Thus, this Court should in the exercise of its discretion deny Accord's request to judicially estop Ms. Primer from asserting her claim. *See In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) ("The decision to invoke the doctrine of judicial estoppel is typically reviewed for abuse of discretion. … A court abuses its discretion when it bases its decision on an incorrect view of the law or a clearly erroneous assessment of the evidence.").

Judicial estoppel is only appropriate where the moving party proves: (1) an asserted legal position that is "plainly inconsistent" with one previously asserted in a prior case, (2) a court's acceptance of that previous position, thus creating the perception that a court was misled, and (3) the Plaintiff debtor did not act inadvertently in taking such a position. *Id.*[1] Judicial estoppel "is not

---

[1] This court has previously applied Fifth Circuit law in this context. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.* MDL No. 16-2740, 2018 WL 5016219, *2-3 (E.D. La. Oct. 16) Moreover, Ms. Primer is a Mississippi resident and designated her forum as the Southern District of Mississippi.

4

governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 666 (N.D. Tex. 2023). "The presence of one or more of these elements does not mandate the invocation of judicial estoppel." *Id.* (internal citation omitted). Rather, courts should determine if applying judicial estoppel is appropriate "in light of the specific facts of each case and the doctrine's purpose of protect[ing] the integrity of the judicial process." *Id.; see also Saunders v. National Collegiate Athletic Ass'n*, 352 So.3d 618, 624 (Miss. 2022) ("[J]udicial estoppel is an equitable doctrine. … And equity eschews mechanical rules."). Instead of strictly applying presumptions, the equitable principles of judicial estoppel should be applied cautiously, considering whether the circumstances warrant judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.").

### A. Ms. Primer Neither Asserted an Inconsistent Legal Position Nor Did the Bankruptcy Court Rely on any Alleged Inconsistency.

There is no inconsistency between Ms. Primer's bankruptcy filings and her current claim because Accord cannot show Ms. Primer knew she had a viable claim at the time she listed her bankruptcy assets. *See, e.g., In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004); *see also Douglas v. Norwood*, 132 F.Supp.3d 834, (N.D. Miss. 2015) ("[T]he Fifth Circuit has observed that judicial estoppel is particularly applicable in cases where *intentional self-*

---

*See* SOF at ¶ 24. Because judicial estoppel was raised in the context of a bankruptcy case involving Ms. Primer's duty to disclose her assets under the Bankruptcy Code, federal law is applied. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

5

*contradiction* is being used as a mean of obtaining unfair advantage in a forum provided for suitors seeking justice.") (citation omitted) (emphasis added); *see also Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (finding if statements can be reconciled in any way, then there is "no occasion to apply an estoppel"). Accord must prove Ms. Primer's knowledge of a viable claim during her bankruptcy proceedings and cannot simply assume that because she filed suit shortly after chapter 7 discharge that she possessed that knowledge before the discharge. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) ("[A]ll of a debtor's assets, including causes of action belonging to the debtor *at the commencement of the bankruptcy case*, vest in the bankruptcy estate upon the filing of a bankruptcy petition.") (emphasis added).

Here, Ms. Primer was diagnosed with breast cancer in October 2019 and began docetaxel chemotherapy treatment one month later in November 2019. SOF at ¶¶ 2-3. She retained counsel in December 2020 but counsel did not file her case without investigating the medical basis for such a potential claim, including what caused her tearing and who would be at fault for her symptoms. SOF at ¶¶ 19-21, 25. Specifically, Ms. Primer testified that she had experienced runny and/or watery eye symptoms along with redness in her eyes for years before ever being diagnosed with breast cancer and was diagnosed with allergies while being prescribed Zyrtec to help mitigate these symptoms. SOF ¶ 1. Ms. Primer did not testify she was certain she had a claim against anybody, let alone the manufacturer of the docetaxel drug she was administered during the pendency of her bankruptcy. SOF ¶¶ 21, 25.

Rather, before filing her case in October 2022, Ms. Primer scheduled further eye examinations and was in contact with her counsel who advised her on multiple occasions that further medical examinations were needed to assess the potential viability of her claim. *See* SOF ¶¶ 21-22, 37; *see also id.* at Ex. 3, ¶¶ 10-11. Indeed, Ms. Primer's counsel did not investigate a final set of ocular

6

records until *after* her June 2022 bankruptcy filing, and after receiving those records, Ms. Primer's counsel still had remaining injury questions before considering filing her potential claim. SOF ¶ 37.[2] It was only after receiving those medical records and communicating with Ms. Primer that the undersigned filed her claim in October 2022.[3] SOF ¶ 38. Thus, during her bankruptcy filing, Ms. Primer, at best, knew lawyers were investigating a potential claim and that she needed further medical evaluation to determine if her potential claim was viable. SOF ¶¶ 20-21, 25, 37. It was not until right before her case was filed in October 2022, that Ms. Primer was told her claim was potentially viable and thus could be filed. SOF ¶ 37. Therefore, Ms. Primer did not have all facts that could give rise to her potential claim at any point before bankruptcy was discharged in September 2022.

Accord argues Ms. Primer knew she has a claim because she contacted counsel, but Accord does not cite, nor could it, that Ms. Primer failed to disclose an *already filed* claim such as those at issue in *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333, 335 (5th Cir. 2004) (debtor initiated the suit while the bankruptcy case was still pending and requested service of process before any discharge) and *In re Coastal Plains, Inc.*, 179 F.3d at 212 (debtor signed schedules knowing it had $10 million claim against a creditor by authorizing its attorney to execute a list-stay stipulation

---

[2] Ms. Primer's counsel makes these disclosures without waiver of her attorney client privilege in its entirety. *Baptist Health v. BancorpSouth Ins. Services, Inc.*, 270 F.R.D. 268, 273-74 (N.D. Miss. 2010) ("By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes [] information discoverable … relating to the same subject matter"). Thus, Ms. Primer's waiver of any attorney client privilege extends only to those communications between herself and counsel that relate to their investigation in determining if Ms. Primer could have a viable claim.

[3] Accord intimates the undersigned counsel was somehow lying in wait to file Ms. Primer's case after her bankruptcy was discharged, but this is a factually unsupported, dubious supposition. First, Accord provides *no* evidence that Ms. Primer ever even told the undersigned counsel about her bankruptcy. Indeed, Accord did not even ask Ms. Primer why she waited to file her case to even give her an opportunity to explain. Instead, they point merely to timing as proof of nefarious intentions. The undersigned counsel flatly rejects Accords intimations.

between the parties while the bankruptcy case was still pending). True, possessing knowledge of the "facts giving rise to a claim may very well be sufficient for a layperson to have knowledge of a potential tort claim" in "obvious cases, like a car wreck or slip-and-fall tort claim." *Saunders*, 352 So.3d at 625 (citing *In re Superior Crewboats, Inc.*, 374 F.3d at 333). In other instances, however, knowledge of the specific facts may not be sufficient proof that the debtor intentionally misled the court because she did not know of a viable claim at that time. *See id*. To that end, *Saunders* is instructive. 352 So. 3d at 625. There, the debtor did not disclose a potential claim against the NCAA until after another former coach was successful in seeking wages from the NCAA. *See generally id.* In reversing the trial court's grant of judicial estoppel, the court noted the Fifth Circuit agrees that a plaintiff's alleged inadvertence need not merely be inferred by failure to disclose. *See id.* at 626. Indeed, the Fifth Circuit was clear "our caselaw has always required courts to consider the facts before them in determining whether a debtor acted inadvertently." *United States ex rel. Bias v. Tangipahoa Parish School Board*, 766 Fed. Appx. 38, 43 n.3 (5th Cir. 2019).

To that end, while Ms. Primer undoubtably contacted a lawyer, "[j]ust because one knows that something wrong or unusual has happened to him or her does not necessarily mean that person is apprised that a viable legal claim exists." *Saunders*, 352 So.3d at 625. Indeed, it is often hard enough for a lawyer to discern whether a wrong is actionable in a person's situation. *Id*.; *see also Righetti v. Wyeth, Inc.* (*In re Diet Drugs)*, 2008 WL 5215959, at *4-5 (E.D. Pa. Dec. 15, 2008) (declining application of judicial estoppel when a layperson was "turned down" from serving as a class representative after her counsel determined she did not have a viable claim upon reviewing injuries and potential causes of action). Unlike an "obvious tort case," such as a car accident, where Ms. Primer may know of every fact that could give rise to her potential claim, more information

8

was needed. *See, e.g., Saunders*, 352 So.3d at 625. First, Ms. Primer dealt with eye-related symptoms long before she ever took docetaxel. SOF ¶ 1. Second, during her chemotherapy treatment, her medical providers merely told her it "could be related" to her docetaxel treatment. SOF ¶¶ 4-6. Third, even after she contacted a lawyer, she was advised by counsel that further evaluation and testing was needed before her claim could be filed. SOF ¶¶ 18-21, 37. There is a genuine fact dispute whether Ms. Primer knew she had a viable claim that she failed to disclose. Summary judgment should be denied.

### B. Alternatively, Any Failure to Disclose was Inadvertent.

Because Ms. Primer did not know she had a viable claim, her failure to disclose was inadvertent. For any nondisclosure to be considered inadvertent, Ms. Primer must either have the lack of knowledge of any such viable claim, or lack of motive for any potential concealment of a claim. *See Wilbracht v. Travelers Cas. & Sur. Co. of Am.*, 731 F.Supp. 3d 761, 771 (E.D. Tex. 2024) (holding the Fifth Circuit has held that inadvertence through lack of knowledge or motive to conceal requires showing debtor "not that she was unaware that she had a duty to disclose her claims *but that she was unaware of the facts giving rise to them"* and thus was not intending to play fast and loose with the Court) (citation omitted). Here, Accord has not proven Ms. Primer had actual knowledge of a ripe, potential claim, and/or had motive to conceal such a claim from the bankruptcy proceeding. Thus, Accord cannot meet the third required prong to prove judicial estoppel.

Accord claims Ms. Primer had a motive to conceal any potential claims because she would have "reaped a windfall" had she disclosed her docetaxel claim during her bankruptcy proceeding. Dkt. 545-1, p. 10. Yet, the Court should "consider the facts and circumstances" to determine if "the debtor's nondisclosure was purposeful." *Saunders*, 352 So.3d at 626 (noting "a Fifth Circuit

9

panel recently clarified that this is the actual Fifth Circuit approach"). Unlike this Court's opinion in *In re Taxotere (Docetaxel) Prod. Liab. Lit.*, 2018 WL 5016219, *5 (E.D. La. Oct. 16), Ms. Primer did not fail to disclose an already filed case. But, even if there were to be a potential claim during her bankruptcy proceeding, Accord has not demonstrated Ms. Primer intended to conceal a potential claim to "play fast and loose" and "reap in a windfall" of financial advantage by concealing such potential claims from the court system. *See In re Superior Crewboats*, 374 F.3d at 334, 336. Rather, Ms. Primer was battling cancer, had communicated to her counsel that she was suffering and continues to suffer from the phenomenon "chemo brain," used to describe a failure to remember events or information, and was still undergoing treatments and trying to get her feet under her. *See* SOF ¶ 23. Ms. Primer's facts are wholly unlike *In re Superior Crewboats, Inc.* in which a businessman anticipated millions from a scheme to conceal claims from the bankruptcy court. 374 F.3d at 330. Similarly, this case is unlike *In re Coastal Plains* in which a multi-million dollar equipment distributer engaged in a convoluted agreement with its creditors in an attempt to escape filing for bankruptcy. 179 F.3d at 202.

Moreover, Ms. Primer's good faith disclosures are evidenced by her *over-disclosure* of her assets in her bankruptcy schedules. She disclosed $28,100 in assets and liabilities of approximately $64,000. SOF ¶¶ 26-27. Her primary assets were two vehicles she disclosed were each worth $12,000. SOF ¶ 28. According to the publicly available "Edmunds Appraisal and Value History" site, these asset values are overestimated for their make, model, year, and mileage reported. SOF ¶¶ 31-33. Ms. Primer's 2018 Nissan Sentra is estimated to have a "True Market Value" of approximately $2,443 today after accounting for the vehicle's average monthly mileage and information specific to her vehicle. SOF at ¶ 32. According to the Edmunds appraisal history, this vehicle has depreciated in value by approximately $1,406 over the past twelve (12) months. SOF

at ¶¶ 32-34. Thus, Ms. Primer's "True Market Value" in 2022 at the time of her bankruptcy filing can be estimated at $6,823. SOF at ¶ 34. This valuation is approximately $5,177 less than the amount claimed by Ms. Primer. SOF ¶ 35. Therefore, Ms. Primer disclosed more than $5,000 worth in assets that she did not actually own at this time. *Id.* Because this asset amount was contemplated and ruled upon by her bankruptcy judge, there is a genuine factual dispute on if Ms. Primer would be receiving *any* additional financial advantage in pursuing the current claims at issue against Accord.

Ms. Primer is not playing fast and loose with the courts in concealing any potential claims during her bankruptcy proceeding to reap in a financial windfall from any recovery here. Rather, there is a material fact dispute if her failure to disclose was inadvertent. Summary judgment should be denied.

## II.  The Learned Intermediary Doctrine Does Not Bar Ms. Primer's Claims

Accord's contentions that the learned intermediary doctrine bars Ms. Primer's claims because her physician testified he would not have changed his decision to prescribe her docetaxel distorts Ms. Primer's claims. She alleges Accord's warning was deficient because Ms. Primer's physician was not warned to promptly refer Ms. Primer for ophthalmologic monitoring during her treatment. The learned intermediary doctrine does not bar Ms. Primer's claim.

A Mississippi failure to warn claim holds that plaintiff must show at the time the product left the defendant's control it was (1) defective because it failed to contain adequate warnings or instructions, (2) the defective condition rendered the product unreasonably dangerous to the user or consumer, and (3) the defective and unreasonably dangerous condition of the product proximately caused damage. *See Mingo v. Janssen (In re Xarelto (Rivaroxaban) Prods. Liab.*

11

*Litig.)*, 2017 LEXIS 115461, *6-7 (E.D. La. July 24) (applying Mississippi law).[4] A plaintiff's claim is barred if the manufacturer can show it provided an adequate warning to the physician. Miss. Code Ann. § 11-1-63(c). *Id.* at *7. Thus, under the learned intermediary doctrine, Accord must demonstrate (1) the warnings and instructions provided to Ms. Primer's prescribing physician were adequate and (2) any alleged inadequacy in the warnings did not proximately cause Ms. Primer's injuries. *See id.* at *6-7.

For good measure, although Accord does not directly contend its label was adequate, Plaintiffs have provided evidence that Accord's warning is inadequate. From the time the FDA approved Accord's docetaxel in 2011 through the conclusion of Ms. Primer's chemotherapy treatment in March 2020, Accord's docetaxel label failed to warn doctors of the risk of progressive/potentially permanent damage to the nasolacrimal drainage system or that permanent damage can be prevented and/or mitigated with monitoring and prompt intervention. SOF ¶¶ 39-43. Instead, when Ms. Primer was treated in November 2019 until March 2020, Accord's docetaxel label only included the language that "lacrimal duct obstruction has been reported," which was "reversible upon discontinuation of the infusion." SOF ¶ 41. Simply put, Accord's label did not (and still does not) disclose the true risk of permanent stenosis or identify the preventative measures needed to treat it. Nor did it convey the potentially rapid onset of stenosis or the need to monitor patients accordingly.

Because of these omissions, physicians failed to appreciate the risk of permanent damage and to inadequately advise their patients. For example, Plaintiff's oncology expert Dr. Kevin Knopf offers the following opinion:

> To this day, nowhere in the label does Sanofi warn of the risk that excessive tearing may be a symptom of progressive stenosis, which, if managed early, can be

---

[4] For the Court's convenience, a true and correct copy is attached hereto as Exhibit 11.

12

> prevented. Prior to May 15, 2020, a reasonable oncologist would conclude that lacrimation or excessive tearing was a temporary side effect that would cease on termination of treatment.[5]
> 
> . . . .
> 
> To the extent the label intended to warn oncologists of stenosis, it fails to convey to a reasonable oncologist that immediate intervention is needed to prevent injury. The label does not convey the immediate need for a patient to be referred to a lacrimal specialist upon early signs of tearing.

SOF ¶ 42. Indeed, Dr. Qu testified he did not know. SOF ¶¶ 10-17.

For the second prong, on which Accord exclusively focuses, Accord claims the learned intermediary doctrine bars Ms. Primer's claim because Dr. Qu unequivocally testified he would not have changed his prescribing decision. But, that is not what Ms. Primer contends.[6] Rather, Ms. Primer argues the label was inadequate because it failed to advise Dr. Qu of the need for prompt referral following Ms. Primer's tearing complaints and that if he had that warning, he would have changed his conduct. And, moreover, Dr. Qu testified that having a label that mentions a potential permanent injury associated with excessive tearing coupled with a suggestion to provide prompt referrals would have first been helpful in treating his patients but secondly would have led him to provide this referral. SOF ¶¶ 7-17.

This type of conduct change, not merely a binary "prescribe or not" decision is part of Accord's failure to warn. To that end *Mingo v. Janssen (In re Xarelto (Rivaroxaban) Prods. Liab. Litig.)* is instructive. 2017 LEXIS 115461. There, the plaintiff claimed to have suffered severe bleeding because of defendant's failure to instruct or suggest further referrals upon showing of these. *Id.* at *8-10. The court held a manufacturer's duty to warn is not merely about side effects but also to

---

[5] In 2020 the label placement of "reversible upon discontinuation of the infusion" was changed in the docetaxel label. SOF ¶ 43.

[6] Accord does not attempt to directly argue the doctrine's first prong by alleging that the warnings provided to Dr. Qu, Ms. Primer's prescribing physician, were in any way adequate. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("arguments raised for the first time in a Reply brief … are waived").

provide adequate instructions for safe use of the drug. *See id.* at *12-14. Similarly, here, Ms. Primer's argument is not whether Dr. Qu would have prescribed docetaxel at all, but rather whether he would have prescribed it differently if Accord provided adequate warnings. That Dr. Qu testified he would not have prescribed Ms. Primer a different drug is irrelevant.

Accord also questions if Dr. Qu ever read Accord's label. Yet, Dr. Qu testifies that he not only reviews drug labels, but also many other sources when he makes a decision to prescribe a drug to his patients, he is familiar with Accord's label(s), and he expects these labels to be accurate. SOF ¶¶ 9-17. When asked whether as an oncologist who prescribes docetaxel, Dr. Qu testified that the warning label in effect when Ms. Primer was treated would be more helpful to him if there was mention of a permanent injury associated with excessive tearing. SOF ¶¶ 16-17.

Therefore, Ms. Primer's injuries alleged in this lawsuit are in fact proximately caused by Accord's failure to adequately warn Dr. Qu about the potentially permanent eye injury risks and provide any instruction to seek prompt ophthalmologic care. Accord has not established the absence of a fact dispute warranting summary judgment on the learned intermediary doctrine.

## CONCLUSION

Summary judgment should be denied. Ms. Primer has shown a genuine fact dispute that Ms. Primer's failure to disclose her potential claim was, at the least, inadvertent; thus, judicial estoppel is improper. Moreover, the learned intermediary doctrine does not bar Ms. Primer's claim.

| | |
|---|---|
| Dated: July 9, 2025 | Respectfully submitted, |
| **PAUL LLP** | **HOTZE RUNKLE** |
| Richard M. Paul III (*pro hac vice*) | */s/ Patrick Hotze* |
| Laura C. Fellows (*pro hac vice*) | Patrick O. Hotze (*pro hac vice*) |
| 601 Walnut Street, Suite 300 | Karen Cannon Shanks, LA Bar 33049 |
| Kansas City, Missouri 64106 | Justin E. Dunlap (*pro hac vice*) |
| Tel: 816-984-8100 | 1101 S. Capital of Texas Highway |
| rick@PaulLLP.com | Building C, Suite 100 |
| laura@PaulLLP.com | West Lake Hills, Texas 78746 |
| | Tel: 512-476-7771 |
| | photze@hotzerunkle.com |
| | karen@hotzerunkle.com |
| | justin@hotzerunkle.com |

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Patrick Hotze*