UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL NO. 3023 |
| EYE INJURY | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | SECTION: "H" (5) |
| All cases naming Sanofi as a Defendant | ) | |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Exclude Dr. Bita Esmaeli (Doc. 441). For the reasons set forth herein, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel, that Plaintiffs were administered for the treatment of cancer, primarily breast cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi"). Sanofi manufactures Taxotere, the brand name for the drug docetaxel. Plaintiffs allege that the drug caused them to sustain injuries to their lacrimal systems, including punctal, canalicular, and/or nasolacrimal

1

duct stenosis, which resulted in excessive tearing, otherwise known as epiphora.[1]

On May 2, 2023, this Court issued Case Management Order No. 16 ("CMO 16").[2] Among other things, CMO 16 set deadlines for discovery and motion practice, and bifurcated general dispositive issues, including but not limited to preemption, adequacy of the label, and general causation. Pursuant to CMO 16, Sanofi provided the expert report of Dr. Bita Esmaeli. On February 28, 2025, Plaintiffs filed the instant Motion to Exclude Dr. Esmaeli.[3] Sanofi opposes.[4]

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] For reference, this Court provided extensive background on the injury at issue and facts giving rise to this case in its prior Order and Reasons addressing preemption. Doc. 583; Doc. 591.

[2] Doc. 115.

[3] Doc. 441

[4] Doc. 490.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[5] and *Kumho Tire Co. v. Carmichael.*[6] The threshold inquiry is whether the expert possesses the requisite qualifications to render opinion on a particular subject matter.[7] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[8] "Under Federal Rule of Evidence 702 and *Daubert*," expert testimony is reliable if "the reasoning or methodology underlying the [expert's] testimony is scientifically valid."[9] In assessing reliability, the Court may consider several nonexclusive factors, such as "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community."[10] "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[11]

---

[5] 509 U.S. 579 (1993).

[6] 526 U.S. 137 (1999).

[7] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

[8] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

[9] Ruffin v. BP Expl. & Prod., Inc., 137 F.4th 276, 280 (5th Cir. 2025) (alterations in original) (citation modified).

[10] Burleson v. Tex. Dept. of Crim. Just., 393 F.3d 577, 584 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 593–94).

[11] Nestle v. BP Expl. & Prod., Inc., 627 F. Supp. 3d 577, 583 (E.D. La. 2022) (alterations in original) (quoting Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 355 (5th Cir. 2007)).

In turn, "[i]n determining admissibility of expert testimony, the court must determine whether the expert's reasoning or methodology fits the facts of case, and whether it will thereby assist the trier of fact to understand evidence; in other words, it must determine whether it is relevant."[12]

In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the jury within that system.[13] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[14] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[15]

## LAW AND ANALYSIS

Dr. Esmaeli is board-certified in ophthalmology and specializes in ophthalmic plastic and orbital surgery. Her area of practice specifically focuses on ophthalmic oncology, ophthalmic plastic surgery, and lacrimal surgery in cancer patients. Before transitioning to private practice, she was a Professor of Ophthalmology in the Department of Plastic Surgery, Division of Surgery at MD Anderson Cancer Center for twenty-six years. As Sanofi explains, Dr. Esmaeli is the "preeminent authority" on the various regimens of Taxotere use and epiphora (excessive tearing) and stenosis of the nasolacrimal drainage

---

[12] *Id.*
[13] *See Daubert*, 509 U.S. at 596.
[14] *Id.*
[15] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

system, and she has published numerous articles on the topic.[16] Sanofi proffers Dr. Esmaeli to offer opinions related to, among other things: (1) the nature and treatment of the injury at issue; (2) her own publications, as well as additional scientific literature; and (3) the Taxotere label.

Plaintiffs seek exclusion of Dr. Esmaeli's opinions related to the Taxotere label, which may be summarized as follows. After briefly explaining the history and contents of the label, Dr. Esmaeli offers rebuttal opinions as to some of Plaintiffs' experts, who opine that the label did not reflect the risk of permanent stenosis resulting in tearing and/or permanent damage to the nasolacrimal drainage system or convey the need for prompt referral to an eye specialist to prevent further progression of the disease. Dr. Esmaeli also offers further opinions related to the purpose of the label and whether oncologists were aware of the risk of stenosis related to Taxotere.

Plaintiffs seek exclusion of Dr. Esmaeli's opinions on two bases. First, they argue that by her own admission, Dr. Esmaeli is not qualified to opine on the sufficiency of the Taxotere label. Second, they argue that Dr. Esmaeli's further opinions related to the label are not adequately supported.

## I. Whether Dr. Esmaeli is Qualified to Offer Opinions Related to the Label

First, Plaintiffs argue that by her own admission, Dr. Esmaeli is not qualified to opine on the "adequacy of Taxotere's label," identifying the following opinion from her report:

Although I am not a label expert, in my opinion, the Taxotere label seems to be sufficient to warn oncologists of stenosis/obstruction,

---

[16] Doc. 490 at 3.

that the obstruction could be permanent, and put them on notice that symptomatic patients should be referred to an eye doctor. Once a patient is referred to the eye doctor, the eye doctor can determine the cause of the tearing and evaluate the patient for proper treatment.[17]

Sanofi responds that although she is not an oncologist or an expert in FDA labeling, Dr. Esmaeli is qualified to offer her opinions based on her (1) research on the injury at issue; (2) extensive clinical experience in the field of oncology; and (3) experience evaluating and treating the injury at issue. Sanofi points out that Plaintiffs' expert Dr. Durairaj also stated that he was not a labeling expert, yet he offers similar opinions. Sanofi further notes that Plaintiffs did not depose Dr. Esmaeli and argues that courts have denied motions to exclude under similar circumstances.[18]

At the outset, the Court rejects Sanofi's argument that Plaintiffs must depose Dr. Esmaeli in order to lodge their objections. The caselaw does not require this.[19] Likewise, the Court disagrees with Plaintiffs that Dr. Esmaeli "admitted" that she is not qualified to offer opinions related to the Taxotere label.

As to whether Dr. Esmaeli is qualified, as this Court previously explained, an expert may be qualified to testify based on the expert's

---

[17] Doc. 441-2 at 33.

[18] Doc. 490 at 6 (first citing Compton v. Moncla Cos., LLC, No. CV 17-2258, 2020 WL 1638287, at *3 (E.D. La. Apr. 2, 2020); then citing *In re* M/V Ram XVII, No. 6:22-CV-0998, 2024 WL 5246869, at *4 (W.D. La. Dec. 30, 2024).

[19] *See, e.g.,* Shaum v. Cunningham Grain Inc., No. 12-0495, 2013 WL 8812524, at *1 (W.D. Okla. May 7, 2013) ("There may be tactical reasons to take a deposition, but deposing the expert is in no sense a prerequisite to a *Daubert* challenge.").

"knowledge, skill, experience, training, or education."[20] Generally, "qualification is viewed liberally and is determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."[21] An expert who is qualified may "draw a conclusion from a set of observations based on extensive and specialized experience."[22] If, however, "the witness is relying solely or primarily on experience," he or she "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[23]

Following this reasoning, courts have held that a physician may testify "about whether generally recognized medical risks associated" with a drug "are in fact warned about" on the label.[24] "Doctors are fully qualified to opine on the medical facts and science regarding the risks and benefits of drugs, and to compare that knowledge with what was provided in the text of labeling and warnings for FDA approved drugs."[25] Indeed, courts have found medical experts "qualified to render an opinion regarding the completeness or accuracy

---

[20] FED. R. EVID. 702.

[21] *In re* Fosamax, 645 F. Supp. 2d 164, 190 (S.D. N.Y. 2009) (citing *In re* Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., No. 1:00-1898, M21-88, MDL No. 1358, 2008 WL 1971538, at *6 (S.D.N.Y. May 7, 2008)).

[22] *Id.* (citing *In re MTBE*, 2008 WL 1971538, at *6).

[23] Andrews v. Rosewood Hotels & Resorts, LLC, 575 F. Supp. 3d 728, 734 (N.D. Tex. 2021) (citing FED. R. EVID. 702 advisory committee's note to 2000 amendment).

[24] *See* Conn v. C.R. Bard, Inc., No. 4:14-CV-298, 2021 WL 2346036, at *3 (S.D. Tex. June 8, 2021) (quoting Winebarger v. Boston Sci. Corp., No. 2:13-CV-28892, 2015 WL 1887222, at *15 (S.D. W. Va. Apr. 24, 2015)).

[25] *In re* Yasmin and YAZ (Drospirenone) Mktg., Sales Pracs., & Prods. Liab. Litig., No. 3:09-md-02100, 2011 WL 6301625, at *11 (S.D. Ill. Dec. 16, 2011).

of" drug labels.[26] Courts have also held, however, that absent experience with FDA compliance and/or the formation of warnings labels, such experts are not qualified to offer testimony "about whether the label complied with the FDA regulations," or offer conclusions about "what should or should not have been included" on a label.[27]

Here, as this Court held with respect to Dr. Durairaj, Dr. Esmaeli may explain the relevant terminology, including the risks associated with docetaxel, and opine as to whether those risks are in fact included on the label.[28] While she does not prescribe Taxotere, like Plaintiffs' expert Dr. Durairaj, Dr. Esmaeli's extensive clinical and research experience renders her qualified to address these issues.[29] Nevertheless, Dr. Esmaeli may not offer an ultimate opinion that the label was "adequate," or "sufficient" to warn oncologists of the risk at issue, as courts treat this a "regulatory" opinion that requires further expertise.[30] Alternatively, such a statement may constitute an

---

[26] *In re* Baycol Prods. Liab. Litig., 532 F. Supp. 2d 1029, 1064 (D. Minn. 2007); *In re*: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine), No. MDL 1203, 2000 WL 876900, at *11 (E.D. Pa. June 20, 2000) (holding same and noting that "whether or not such an opinion would be admissible will depend on an articulation by the trial judge of the issues to be decided and the law to be applied in that proceeding"); *but see In re* Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig., 546 F. Supp. 3d 679, 689 (S.D. Ohio 2021) (stating that generally, "[e]xperts may not testify as to the legal or regulatory adequacy of warnings," but allowing medical experts to "offer opinions about whether the warnings sufficiently apprised medical doctors of the risks of the" medical device at issue "from the vantage point of the end-user"). Here, while Dr. Esmaeli and Dr. Durairaj are not oncologists and have not prescribed Taxotere, both experts have experience with the injury at issue and may at least discuss that injury and compare it to the risk described on the label.

[27] *See Conn*, 2021 WL 2346036, at *3

[28] *See In re Diet Drugs*, 2000 WL 876900, at *11.

[29] *See id.*

[30] *See Conn*, 2021 WL 2346036, at *3 (citing *In re:* Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig., No. MDL 2327, 2016 WL 4556807, at *4 (S.D. W. Va. Aug. 31, 2016)).

impermissible legal conclusion[31] and/or improper speculation.[32] And, Dr. Esmaeli is not an oncologist. Accordingly, as was the case with Dr. Durairaj, Dr. Esmaeli will be limited in this respect.

## II.   Additional, Purportedly "Unsupported" Opinions

Next, Plaintiffs argue that Dr. Esmaeli's "further opinions" related to the Taxotere label are not adequately supported.[33] Plaintiffs do not specifically identify any of these "further opinions" other than those related to (1) additional opinions about "how oncologists interpret the label" and (2) "the purpose of the label."[34] The Court addresses each in turn.

### A.   Opinions Related to Oncologists

Plaintiffs argue that Dr. Esmaeli's "clinical expertise does not extend to opining as to how oncologists interpret the label and should therefore be excluded."[35] Relevant to that issue, Dr. Esmaeli explains in her report that she also reviewed the label of another chemotherapy drug, 5-Fluorouracil ("5-FU"). She states that "the 5-FU label . . . lists a potential side effect of 'lacrimal duct stenosis.' As such, a warning of 'lacrimal duct' obstruction is the industry standard and an *adequate label to put oncologists on notice of the side effect.*"[36]

---

[31] *See* Robinson v. Ethicon, 588 F. Supp. 3d 726, 735–36 (S.D. Tex. 2022) (noting that in the Fifth Circuit, "an expert witness may give an opinion on an ultimate issue of fact if the expert is qualified to do so, but the witness may not offer conclusions of law," and is not "permitted to merely tell the jury what result to reach." (citation modified)).

[32] *See In re Suboxone*, MDL NO. 2445, No. 13-MD-2445, 2020 WL 6887885, at *27 (E.D. Penn. Nov. 24, 2020) (collecting cases holding that testimony as to "the asserted perceptions of other doctors, or whether doctors generally understand the contents of the label" is impermissibly speculative).

[33] Doc. 441-1 at 3.

[34] *Id.*

[35] Doc. 514 at 2.

[36] Doc. 441-2 at 33 (emphasis added).

She further states that, based on her experience serving on her hospital's Institutional Review Board ("IRB") and conducting "clinical trials, I know that the preferred language for drug side effects and potential toxicity is simple terminology, often referred to as '8th grade level' that is understandable by the general public, and in this case by the *average oncologist and average ophthalmologist.*"[37]

Next, Dr. Esmaeli opines that based on her experience, "medical oncologists are aware of the potential for permanent stenosis/obstruction when patients present with tearing when receiving Taxotere-containing regimens."[38] She apparently reaches this conclusion based on (1) the number of patients referred to her with this side effect and (2) her perceived decrease in the number of procedures related to this condition that she has performed over the years.

Again, while she may opine on the terms used in the label and the risks associated with the drug, Dr. Esmaeli is not qualified to opine on FDA regulations or requirements for warnings labels. Thus, her opinion that the label language is "industry standard" is inadmissible. Further, as was the case with Dr. Durairaj, Dr. Esmaeli may discuss her personal experience treating patients with this condition. Assuming such testimony is otherwise admissible, she may also discuss her experience with her hospital's IRB. She may not, however, offer her broader opinions about "preferred language," what oncologists knew or understood about the risk at issue, how any oncologist

---

[37] *Id.* (emphasis added).
[38] *Id.*

10

would interpret the label. She also may not opine that the label was "adequate" to put oncologists on notice.

Finally, Dr. Esmaeli opines that "if a medical oncologist was confused about what lacrimal duct meant and the oncologist googled the term lacrimal duct, all of the top results discuss the tear system and even include headings such as: 'blocked tear duct—symptoms & causes' with a link to the Mayo Clinic."[39]  Courts have held that medical testimony about what a third-party physician would do or would think generally "must be based on something more reliable than simply the expert's own experience as a doctor."[40] Here, Dr. Esmaili may not offer speculative opinions about what oncologists would do if confused. But provided such testimony is otherwise admissible, Dr. Esmaeli may testify as to the contents of the Mayo Clinic's website generally.

## B.     Opinions Related to the Purpose of the Label

Finally, Plaintiffs argue that Dr. Esmaeli's opinions related to the purpose of the label are unsupported, irrelevant, do not fit the facts of the case, and would be unhelpful to the jury. In her report, Dr. Esmaeli opines that "labels are not used to tell doctors how to manage a side effect," and that "[p]utting highly specialized anatomically precise language in the label, in my opinion, would in fact defeat the purpose of informing the oncologists of what the side effect is and what to look for and when to make the appropriate referrals."[41] The Court finds that Dr. Esmaeli is not qualified to offer her

---

[39] Doc. 441-2 at 33.

[40] *See In re Suboxone*, 2020 WL 6887885, at *27 (quoting Bartlett v. Mut. Pharm. Co., 742 F. Supp. 2d 182, 196 (D.N.H. 2010)). Notably, both parties have proffered experts in the fields of oncology and regulatory matters to offer opinions related to the label.

[41] *Id.*

11

opinions about the use and purpose of labels, as she is not—by own her admission—a label expert and/or an expert in regulatory matters.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Exclude Dr. Esmaeli (Doc. 441) is **GRANTED IN PART** and **DENIED IN PART**, as detailed herein.

New Orleans, Louisiana this 24th day of April, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

12