**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL NO. 3023 |
| EYE INJURY | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | SECTION: "H" (5) |
| All cases naming Sanofi as a Defendant | ) | |

## ORDER AND REASONS

Before the Court is the Joint Motion to Exclude Certain Opinions of Kevin B. Knopf, M.D., MPH (Doc. 459) filed by Defendant Sanofi and since-dismissed Defendants Accord and Sandoz. For the reasons set forth herein, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel, that Plaintiffs were administered for the treatment of cancer, primarily breast cancer. Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi"); Accord Healthcare, Inc. ("Accord"); and Sandoz Inc. ("Sandoz"). Sanofi manufactures Taxotere, the brand name for the drug docetaxel. Accord and Sandoz manufacture versions of docetaxel. Plaintiffs allege that the drug caused them to sustain injuries to their lacrimal systems,

1

including punctal, canalicular, and/or nasolacrimal duct stenosis, which resulted in excessive tearing, otherwise known as epiphora.[1]

On May 2, 2023, this Court issued Case Management Order No. 16 ("CMO 16").[2] Among other things, CMO 16 set deadlines for discovery and motion practice, and bifurcated general dispositive issues, including but not limited to preemption, adequacy of the label, and general causation. Pursuant to CMO 16, Plaintiffs provided the expert report of Kevin B. Knopf, M.D., MPH ("Dr. Knopf").

On February 28, 2025, Defendants Sanofi, Accord, and Sandoz jointly filed the instant Motion to Exclude Certain Opinions of Dr. Knopf.[3] Plaintiffs oppose.[4] On January 16, 2026, this Court granted Defendant Accord's and Sandoz's Motions for Summary Judgment based on preemption.[5] This Court entered Judgment in favor of Defendants Accord and Sandoz on March 6, 2026, dismissing Plaintiffs' claims against them with prejudice.[6] Accordingly, as to the instant Motion, Sanofi is the only remaining Defendant.

---

[1] For reference, this Court provided extensive background on the injury at issue and facts giving rise to this case in its prior Order and Reasons addressing preemption. Doc. 583; Doc. 591.

[2] Doc. 115.

[3] Doc. 459.

[4] Doc. 483.

[5] Doc. 591. On December 1, 2025, this Court denied Sanofi's Motion for Judgment based on Preemption. Doc. 583. On February 27, 2026, this Court entered an Order and Reasons granting Sanofi's Motion to Certify this Court's December 1, 2025 Order and Reasons for Interlocutory Appeal. Doc. 606.

[6] Doc. 606.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[7] and *Kumho Tire Co. v. Carmichael*.[8] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[9] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[10] "Under Federal Rule of Evidence 702 and *Daubert*, expert testimony is admissible if the reasoning or methodology underlying the expert's testimony is scientifically valid and can properly be applied to the facts in issue."[11]

---

[7] 509 U.S. 579 (1993).

[8] 526 U.S. 137 (1999).

[9] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

[10] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

[11] Ruffin v. BP Expl. & Prod., Inc., 137 F.4th 276, 280 (5th Cir. 2025) (citation modified).

3

First, in assessing reliability, the Court may consider several nonexclusive factors, such as "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community."[12] "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[13]

"Second, the Court must determine whether the expert's reasoning or methodology 'fits' the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence. In other words, it must determine whether it is relevant."[14]

In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the jury within that system.[15] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[16] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[17]

---

[12] Burleson v. Tex. Dep't of Crim. Just., 393 F.3d 577, 584 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 593–94).

[13] Nestle v. BP Expl. & Prod., Inc., 627 F. Supp. 3d 577, 583 (E.D. La. 2022).

[14] *Id.* at 583 (citing *Daubert*, 509 U.S. at 591).

[15] *See Daubert*, 509 U.S. at 596.

[16] *Id.*

[17] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

## LAW AND ANALYSIS

Dr. Knopf is a practicing hematologist and medical oncologist and former Division Chief of Hematology and Oncology at Alameda Health Systems in Oakland, California. He is currently responsible for supervising the Hematology and Oncology Division, treating patients, and teaching residents and medical students. He is also an Assistant Clinical Professor of Medicine at the University of California, San Francisco School of Medicine, an Associate Professor at the University of South Carolina School of Pharmacy, and conducts research in pharmaco-epidemiology. Plaintiffs proffer Dr. Knopf to address the following issues: (1) Taxotere and docetaxel as treatment options available to oncologists; (2) relationship between medical oncologists and their patients, including responsibility of oncologists to communicate risks and benefits of different treatment options; and (3) "accuracy and adequacy" of the Taxotere/docetaxel label in communicating to oncologists the type and severity of the risk of harm to the nasolacrimal drainage system.[18]

Sanofi moves to exclude three categories of Dr. Knopf's opinions. First, Sanofi seeks to exclude Dr. Knopf's opinions regarding the Taxotere labeling, arguing that Dr. Knopf is not qualified and that he lacks a reliable basis for such an opinion. Second, Sanofi seeks to preclude Dr. Knopf from offering any "general causation" opinion, arguing that Dr. Knopf did not disclose such an opinion in his report and that regardless, he does not apply any reliable methodology. Third, Sanofi seeks to preclude Dr. Knopf from opining about the "motivations or conduct of pharmaceutical companies in general," as well as

---

[18] Doc. 459-1 at 4.

"Sanofi-specific conduct" or regulatory compliance, arguing that such opinions were not disclosed and that Dr. Knopf lacks a foundation or reliable basis for such opinions. The Court addresses each argument in turn.

## I.   Opinions Related to the Label

Dr. Knopf opines that the Taxotere label "does not adequately convey the severity of [the] permanent risk of stenosis of the nasolacrimal drainage system."[19] More specifically, he opines that the label fails to warn about the "potentially permanent nature of lacrimation or excessive tearing" and "fails to advise physicians of the importance of early recognition and treatment of this side effect to avoid permanent injury."[20] In his report, Dr. Knopf explains the history of the Taxotere label, which, since 2003, has included a warning stating that "[e]xcessive tearing which may be attributable to lacrimal duct obstruction has been reported."[21] He further notes that the same section of the label included a sentence providing that "[t]hese were reversible upon discontinuation of the infusion."[22] Dr. Knopf explains that this language "remained deficient" until it was revised in 2020, and opines that during this time, the label lead "the reader of the warning to believe" that "excessive tearing" and "lacrimal duct obstruction" were temporary side effects that would reverse upon discontinuation of treatment.[23]

Sanofi seeks to exclude these opinions (and all other opinions related to the adequacy of the Taxotere label), arguing that Dr. Knopf is not qualified and

---

[19] Doc. 459-1 at 29.
[20] *Id.* at 35.
[21] *See* Doc. 459-1; Doc. 483-3.
[22] *See* Doc. 459-1 at 33–34.
[23] *Id.*

that he lacks a reliable basis for such opinions. As to his qualifications, Sanofi asserts that Dr. Knopf acknowledged in his deposition testimony that he is not an expert on FDA regulations or labeling. They point to Dr. Knopf's deposition testimony, wherein he stated that he is not retained as an expert in FDA labeling requirements and that he was only offering opinions as an oncologist who treats patients. Sanofi further argues that Dr. Knopf's reliance on his own experience, as well as the report and opinions of Plaintiffs' ophthalmology expert and oculoplastic surgeon Dr. Vikram D. Durairaj, do not provide a reliable basis for his opinions.

Where, as is the case here, a medical expert relies on his or her personal experience, the expert's qualifications and the reliability of the expert's methodology go hand-in-hand. "The strength of an expert's qualifications provides circumstantial evidence of reliability."[24] Expert testimony may be based on "experience alone–or experience in conjunction with other knowledge, skill, training or education."[25] "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."[26]

If, however, "the witness is relying solely or primarily on experience, then he or she must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

---

[24] *In re* Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 179 (S.D.N.Y. 2009) (citing Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C. Cir. 1996)); *see also Kumho Tire*, 526 U.S. at 150 (explaining that "relevant reliability concerns may focus upon personal knowledge or experience").

[25] FED. R. EVID. 702 advisory committee's note to 2000 amendments.

[26] *Id.*

7

experience is reliably applied to the facts."[27] "Overall, the trial court must strive to ensure that the expert, 'whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[28]

Courts regularly hold that "doctors are fully qualified to opine on the medical facts and science regarding the risks and benefits of drugs, and to compare that knowledge with what was provided in the text of labeling and warnings for FDA approved drugs."[29] Absent experience in warnings labels and/or FDA regulations, however, a medical expert may not offer opinions "about whether the label complied with the FDA regulations."[30] Further, courts have precluded more general testimony from expert-physicians "about what information *should* or *should not* be included" on a drug's label, or that a label was "adequate," reasoning that such experts "must possess additional expertise" in FDA regulations and/or the development of warnings labels.[31]

---

[27] Andrews v. Rosewood Hotels & Resorts, LLC, 575 F. Supp. 3d 728, 734 (N.D. Tex. 2021) (citation modified).

[28] *Id.* at 735 (quoting *Kumho Tire*, 526 U.S. at 152).

[29] *See, e.g.*, Conn v. C.R. Bard, Inc., No. 4:14-CV-298, 2021 WL 2346036, at *3 (S.D. Tex. June 8, 20210) (citation modified); *see also In re* Yasmin & YAZ (Drospirenone) Mktg., Sales Pracs., & Prods. Liab. Litig., No. 3:09-MD-02100, 2011 WL 6301625, at *11 (S.D. Ill. Dec. 16, 2011).

[30] *In re* Taxotere (Docetaxel) Prods. Liab. Litig., MDL No. 16-2740, 16-17039, 2021 WL 111778, at *3 (E.D. La. Jan. 12, 2021) (Milazzo, J.) (allowing Dr. Miletello to testify about the Taxotere label from his perspective as an oncologist but not about whether the label complied with FDA regulations).

[31] *Conn*, 2021 WL 2346036, at *3–4 (quoting *In re*: Ethicon Inc. Pelvic Repair Sys. Prods. Liab. Litig., MDL No. 2327, 2016 WL 4556807, at *4 (S.D. W. Va. Aug. 31, 2016)); *see also In re*: C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig., MDL No. 2187, 2018 WL 4220618, at *3 (S.D. W. Va. Sept. 5, 2018).

On the other hand, courts have "recognized that a doctor's experience alone renders him a reliable witness to testify about a reasonable standard of care or what a reasonable physician would do."[32] "Consistent with that principle, numerous cases have held that a doctor may, based on his or her experience, 'testify about what a reasonable doctor should know' or 'how a reasonable doctor would interpret [a] safety warning.'"[33] Indeed, courts have allowed medical experts to opine on the "adequacy" of a label "from the perspective of a medical practitioner who is familiar with" a drug or device or similar drugs or devices.[34] Further, courts have also allowed testimony from medical experts to opine on the "completeness or accuracy" of a drug's label and/or "whether the label warned of known risks."[35] And in another MDL involving the same drug at issue here, this Court allowed the defendant's

---

[32] *In re* Suboxone ((Buprenorphine Hydrochloride and Naloxone), MDL NO. 2445, 16-5073, 2020 WL 6887885, at \*26 (E.D. Pa. Nov. 24, 2020) (collecting cases).

[33] *Id.* (alterations in original) (quoting Bartlett v. Mut. Pharm. Co., 742 F. Supp. 2d 182, 196 (D.N.H. 2010)).

[34] *See In re* Mirena IUD Prods. Liab. Litig., 169 F. Supp. 3d 396, 422–23 (S.D.N.Y. 2016); *see also In re* Davold, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig., 546 F. Supp. 3d 679, 689 (S.D. Ohio 2021) (explaining that while experts may not opine on the ultimate issues of "the legal or regulatory adequacy of warnings," medical experts "may offer opinions about whether the warnings sufficiently apprised medical doctors of the risks").

[35] *See In re* Baycol Prods. Liab. Litig., 532 F. Supp. 2d 1029, 1064, 1069 (D. Minn. 2007) (allowing medical expert to opine on completeness or accuracy of label and noting that medical opinion on "whether the label warned of known risks" would be permissible, but holding that medical expert could not opine on what the label should or should not have included); *see also In re*: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine), No. MDL 1203, 2000 WL 876900, at \*11 (E.D. Pa. June 20, 2000) (allowing medical experts to opine on "completeness" and "accuracy" of the label "and—it follows from that—the extent to which any inaccuracies or omissions could either deprive a reader or mislead a reader," and noting that "whether or not such an opinion would be admissible will depend on an articulation by the trial judge of the issues to be decided and the law to be applied in that proceeding").

expert to opine about "the Taxotere label from his perspective as an oncologist."[36]

The Court finds that Dr. Knopf is qualified to opine on the Taxotere label. He is an oncologist with years of experience and regularly prescribes the drug. By Dr. Knopf's own admission, however, he is not an expert on FDA regulations. Thus—to the extent he intends to do so—he may not opine on that issue; nor may he opine about what the label should or should not have included or opine that the label was "deficient," as such statements appear to cross the line into impermissible regulatory opinions.[37]

Further, Dr. Knopf may not offer an ultimate opinion that the label is "inadequate" to warn physicians, as that conclusion may constitute an impermissible legal conclusion under the relevant legal standard. In the Fifth Circuit, an expert witness may give an opinion on an ultimate issue of fact if the expert is qualified to do so, but the witness may not offer conclusions of law or merely tell the jury what conclusion to reach.[38] But while Dr. Knopf may not venture that far, he may offer opinions about the label from his "perspective as an oncologist."[39] Although Sanofi argues that Dr. Knopf fails to cite any "industry standards, regulations, literature, or other sources" in support of his

---

[36] *See In re* Taxotere (Docetaxel) Prods. Liab. Litig., MDL No. 16-2740, 16-17039, 2021 WL 76398, at *3 (E.D. La. Jan. 8, 2021) (Milazzo, J.).

[37] *Conn*, 2021 WL 2346036, at *3; *see also In re Baycol*, 532 F. Supp. 2d at 1069.

[38] *See* Robinson v. Ethicon, 588 F. Supp. 3d 726, 735 (S.D. Tex. Mar. 2022); *see also* United States v. Oti, 872 F.3d 678, 691 (5th Cir. 2017).

[39] *See In re Taxotere*, 2021 WL 111778, at *3; Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 440 (E.D.N.Y. 2011).

opinions, Rule 702 permits him "to draw a conclusion from a set of observations based on extensive and specialized experience."[40]

Sanofi further argues that Dr. Knopf's experience is insufficient to provide a reliable basis for his label-related opinions, pointing out that Dr. Knopf testified that of the more than 1,000 patients that he has treated with Taxotere/docetaxel, he has only referred "between five and ten" to an ophthalmologist, only "three or four" patients had tubes placed, and no patients "had to have severe surgery" or "had permanent tearing."[41] Sanofi also asserts that Dr. Knopf did not "independently verify" Dr. Durairaj's opinions—which he relies on in his report—including that permanent damage to the nasolacrimal drainage system is preventable with early intervention.

The Court disagrees. First, the fact that Dr. Knopf has only referred to a specialist between five and ten patients (as opposed to some other, unspecified number) with signs of tearing does not render him unqualified nor make his opinion unreliable. Notably, in addition to his experience, Dr. Knopf relied on the published scientific literature discussing this adverse effect and resulting surgical interventions. That no patient Dr. Knopf has referred has required "severe surgery" or experienced "permanent tearing" likewise does not render him unqualified.

Second, Dr. Knopf's reliance on Dr. Durairaj's opinions is permissible. As this Court has explained, Rule 703 makes clear that an expert may rely on the work of another expert provided that such reliance is reasonable.[42] That Rule

---

[40] *Kumho Tire*, 526 U.S. at 156.

[41] Doc. 506 at 4.

[42] *In re* Taxotere, MDL No. 16-2740, 16-17144, 2019 WL 3997122, at *5 (E.D. La. Aug. 23, 2019) (Milazzo, J.) (citing FED. R. EVID. 703).

11

"reflects a clear understanding that experts often rely on one another's specialties in order to come to an interdisciplinary conclusion in complex matters."[43]  Plaintiffs state that Dr. Knopf regularly relies on the opinions of other physicians in the cancer treatment setting, including opinions from other specialists regarding appropriate treatment of side effects. It would of course be reasonable for him to do so.

Nevertheless, while a medical expert may opine on the label as described above, courts have precluded broader testimony about "whether physicians generally read and comprehend drug labels, or whether doctors generally understand the contents of" drug labels, reasoning that such testimony is impermissibly speculative.[44] Courts have found that medical experts "may express opinions regarding the accuracy and adequacy of" a drug's label "without reference to the asserted perceptions of other doctors."[45] Thus, here, while Dr. Knopf may offer opinions about the Taxotere from his perspective as an oncologist, he may not offer speculative opinions about oncologists in general.[46]

---

[43] Tajonera v. Black Elk Energy Offshore Operations, L.L.C., No. 13-366, 2016 WL 3180776, at *10 (E.D. La. June 7, 2016).

[44] *In re* Seroquel Prods. Liab. Litig., No. 6:06-md-1769, 2009 WL 3806436, at *8 (M.D. Fla. July 20, 2009) (allowing medical and regulatory experts to opine on the "accuracy and adequacy" of the label but that such experts could not "testify regarding whether physicians generally read and comprehend drug labels, or whether doctors generally understand the contents of the . . . label" because such "opinions are impermissibly speculative").

[45] *Id.*

[46] Sanofi argues that "Dr. Knopf's opinion that the label fails to inform prescribers that lacrimal duct obstruction can be permanent" is unreliable because it "is contradicted by his testimony that the Taxotere/docetaxel label is silent with respect to the duration of lacrimal duct obstruction . . . and that a medical obstruction can be permanent absent intervention." Doc. 459-3 at 12. The Court disagrees that these statements necessarily contradict one another. Regardless, Sanofi's objections go to the weight of Dr. Knopf's

Finally, Sanofi appears to argue that Dr. Knopf may not testify as to whether any of Plaintiffs' treating oncologists would have found the warning sufficient. The court agrees that Dr. Knopf may not offer such testimony, as it is speculative.

In sum, Dr. Knopf may testify regarding the Taxotere label from his perspective as an oncologist who regularly prescribes the drug, including his opinions about the completeness or accuracy of the label. He may not opine, however, as to Sanofi's compliance with FDA regulations.

## II. "General Causation" Opinion

Sanofi also seeks to preclude Dr. Knopf from offering any general causation opinions, that is, that Taxotere/docetaxel is "capable of causing" stenosis and/or permanent damage to the lacrimal drainage system in the general population.[47] Sanofi contends that while Dr. Knopf testified that "cause and effect is implied" in his report, his report does not offer any general causation analysis or opinion. Sanofi therefore argues that Dr. Knopf should be precluded from offering opinions that were not previously disclosed.

Importantly, "the relevance and reliability of expert testimony turn upon its nature and the purpose for which its proponent offers the testimony."[48] Here, though Sanofi suggests otherwise, a review of Dr. Knopf's report and

testimony, not its admissibility. Rule 702's emphasis on "'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Andrews*, 575 F. Supp. 3d at 735 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendments).

[47] *See* Wells v. SmithKline Beecham Corp., 601 F.3d 375, 378 (5th Cir. 2010) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." (citation modified)).

[48] *Andrews*, 575 F. Supp. 3d at 735.

deposition testimony indicates that the purpose of his opinion is not to establish causation. Accordingly, the Court will address any objections raised by Sanofi on this issue at trial.[49]

## III. Opinions Related to the Motivations or Conduct of Pharmaceutical Companies in General and Sanofi-Specific Conduct

Sanofi argues that Dr. Knopf "offered several vague criticisms" of drug manufacturers generally, as well as Sanofi's conduct specifically, during his deposition.[50] Because Dr. Knopf did not disclose any opinions on these issues, Sanofi argues that he must be precluded from testifying about them. It further contends that Dr. Knopf is not qualified to opine on FDA/regulatory compliance and that he did not review sufficient facts or data.

As to precisely which opinions Sanofi seeks to exclude, Sanofi points to deposition testimony where, when asked if he had "any issues with Sanofi," Dr. Knopf responded that Sanofi "charge[s] too much for their drugs."[51] Sanofi, however, fails to identify any specific opinions in Dr. Knopf's report that it finds objectionable to permit this Court to review them with specificity. Accordingly, Sanofi's objections are denied as vague and/or premature. The Court will consider these issues if and when Sanofi raises them at trial.[52]

---

[49] On April 2, 2026, this Court denied Sanofi's Motion for Summary Judgment based on General Causation and addressed three related Motions to Exclude. Doc. 619. Unlike the experts addressed in those Motions, Dr. Knopf was not addressed in Sanofi's Motion for Summary Judgment.

[50] Doc. 459-3 at 15.

[51] Doc. 459-2 at 67.

[52] Accord and Sandoz also raised similar objections regarding "Sandoz-specific" and "Accord-specific" opinions. *See* Doc. 493-3 at 17–18. Since Accord and Sandoz have since been dismissed, those arguments are denied as moot.

14

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Sanofi's Motion to Exclude Certain Opinions of Kevin B. Knopf, MD, MPH (Doc. 459) is **GRANTED IN PART** and **DENIED IN PART**, as described herein.


New Orleans, Louisiana this 29th day of April, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

15