**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL NO. 3023 |
| EYE INJURY | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | SECTION: "H" (5) |
| All cases naming Defendant Sanofi | ) | |

## ORDER AND REASONS

Before the Court is Sanofi's Motion for Summary Judgment Based on Label Adequacy (Doc. 447). For the reasons set forth herein, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel, that Plaintiffs were administered for the treatment of cancer, primarily breast cancer.[1] Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. (collectively, "Sanofi"). Plaintiffs allege that Taxotere caused them to sustain injuries to their lacrimal systems, including punctal, canalicular, and/or nasolacrimal duct stenosis, which resulted in excessive tearing, otherwise known as epiphora. Plaintiffs bring claims based on strict products liability (failure to warn) and negligence.

---

[1] Taxotere is the brand name for the drug docetaxel.

1

In its prior Order and Reasons addressing Sanofi's motion for summary judgment on preemption, this Court provided extensive background on the injury at issue and the history of the Taxotere label, which the Court incorporates by reference here.[2] To summarize, in 2002, Sanofi submitted a changes-being-effected ("CBE") change to include an  "Ophthalmologic" category in the Postmarketing Experiences subsection of the Adverse Reactions section of the label.[3] After communicating with the FDA, the label was ultimately changed in 2002 to include the following warning:

> Ophthalmologic: conjunctivitis, lacrimation or lacrimation with or without conjunctivitis. Excessive tearing which may be attributable to lacrimal duct obstruction has been reported.[4]

Between 2003 and 2020, the label underwent various revisions, although the label's language regarding "[e]xcessive tearing which may be attributable to lacrimal duct obstruction" remained the same. The current Taxotere label continues to include that language in the Postmarketing Experiences subsection.[5]

Generally, Plaintiffs contend the label was at all times inadequate because it failed to warn that Taxotere could cause progressive and potentially permanent stenosis of the nasolacrimal drainage system resulting in excessive tearing, which may require surgical intervention. Plaintiffs further allege that

---

[2] *See* Doc. 583. As this Court previously explained in its Order and Reasons addressing Sanofi's motion for summary judgment on preemption, since 2003, the regulations regarding prescription drug labeling have been amended in certain respects, including those addressing the categorization and hierarchy of a drug's label. *See* Doc. 583 at 7 & n.15, 25.

[3] See Doc. 481-1 at 7.

[4] Doc. 486-1 at 7.

[5] See Doc. 486-1 at 8.

the label failed to warn about the need for prompt ophthalmologic referral upon signs of excessive tearing.

On May 2, 2023, this Court issued Case Management Order No. 16 ("CMO 16").[6] Among other things, CMO 16 set deadlines for discovery and motion practice, and bifurcated general dispositive issues, including but not limited to preemption, adequacy of the label, and general causation. On February 28, 2025, Sanofi filed the instant Motion for Summary Judgment Based on Label Adequacy.[7] Plaintiffs oppose.[8]

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish

---

[6] Doc. 115.

[7] Doc. 447.

[8] Doc. 486.

[9] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[10] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[11] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

the existence of an element essential to that party's case."[12] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[13] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

Sanofi moves for summary judgment on two grounds. First, Sanofi argues that Plaintiffs lack admissible expert evidence on the adequacy of the Taxotere label. Second, Sanofi contends that even considering Plaintiffs' expert evidence, no genuine dispute of material fact exists because Taxotere's warning is "adequate as a matter of law."[16]

### I.   Expert Evidence

Sanofi argues that Plaintiffs lack expert testimony on label adequacy, relying on arguments raised in its motions to exclude Drs. Kevin Knopf, David

---

[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[13] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[14] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (Berrigan, J.) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[15] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[16] Doc. 447-1 at 9.

Ross, and Vikram Durairaj.[17] Sanofi contends that without expert testimony, Plaintiffs' claims fail as a matter of law.

Here, Plaintiffs assert claims under the products liability laws of their respective states. Because this Court exercises diversity jurisdiction, it applies state substantive law.[18] Where, as here, a transferee court presides over multiple diversity actions consolidated in multidistrict litigation, it must apply the substantive law of each transferor forum.[19] Most, if not all, jurisdictions generally require expert testimony on label adequacy.[20] The Court need not

---

[17] Sanofi further refers to the arguments raised in its motions to exclude Dr. McGwin, Plaintiffs' epidemiology expert, and Dr. Thundiyil, Plaintiffs' toxicology expert. As to Dr. McGwin, Plaintiffs conceded that he was not offering any opinions regarding the adequacy of the label. *See* Doc. 487 at 27. As to Dr. Thundiyil, although Sanofi argues in the instant Motion that he admitted he is not an expert in labeling, Sanofi's motion to exclude did not challenge any labeling-related opinions, instead seeking exclusion only of his general causation opinions. *See* Doc. 446. Thus, neither expert appears to offer opinions regarding label adequacy.

[18] *See* Newsome v. Int'l Paper Co., 123 F.4th 754, 761 (5th Cir. 2024) (finding that Texas substantive law applied to the inquiry of whether expert evidence was required to establish causation); *see also* Smith v. Christus Saint Michaels Health Sys., 496 F. App'x 468, 470 (5th Cir. 2012); Ruffin v. BP Expl. & Prod., Inc., --- F.4th ----, 2026 WL 1478150, at *2 n.1 (5th Cir. May 27, 2026).

[19] *In re* Taxotere (Docetaxel) Prods. Liab. Litig., MDL No. 16-2740, 2022 WL 110494, at *2 (E.D. La. Jan. 12, 2022) (Milazzo, J.) (quoting *In re* Air Disaster at Ramstein Air Base, Germany on 8/29/90, 81 F.3d 570, 576 (5th Cir. 1996)); *In re*: Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig., 797 F. Supp. 2d 940, 942 (D. Ariz. 2011) ("As an MDL transferee court, we apply the substantive law of each transferor forum.").

[20] *See, e.g., In re* Taxotere (Docetaxel) Prods. Liab. Litig., 462 F. Supp. 3d 650, 653 & n.14 (E.D. La. 2020) (Milazzo, J.) (collecting cases holding that "[t]o defeat summary judgment, Plaintiffs would need to show expert evidence creating an issue of fact on the adequacy of Taxotere's warning"); Eghnayem v. Boston Sci. Corp., 873 F.3d 1304, 1321 (11th Cir. 2017) (noting that "the adequacy or inadequacy of the warning to inform a physician must, except in the more obvious situations, be proved by expert testimony" (citation modified)); Chandler v. Janssen Pharms., Inc., 322 F. Supp. 3d 314, 325 (E.D.N.Y. 2018) ("Even though a jury does not need expert testimony to find a label inadequate, courts routinely have held that conclusory opinions from counsel or experts are not enough to create a genuine issue of material fact in a failure to warn claim." (citation modified)).

resolve whether expert testimony is required, however, because the Court has previously determined that Plaintiffs' experts may offer opinions related to the Taxotere label.[21]

Specifically, this Court found that Dr. Ross, Plaintiffs' regulatory expert, could opine on the FDA regulatory scheme and the regulatory adequacy of the Taxotere label, including whether Sanofi complied with certain regulations.[22] The Court determined that Plaintiffs' oncology expert Dr. Knopf may offer testimony—subject to certain limitations—regarding the Taxotere warning from the perspective of an oncologist, including testimony concerning the risks identified on the label and how those warnings compare to the risks allegedly associated with the drug.[23] Finally, the Court determined that Dr. Durairaj, Plaintiffs' ophthalmology expert, may also testify regarding the injury at issue, the risks associated with Taxotere, and compare those risks to the risks warned about on the label.[24] Accordingly, because Plaintiffs have produced admissible expert testimony related to the Taxotere label, Sanofi is not entitled to summary judgment on the ground that Plaintiffs lack expert evidence.

## II.   "Adequate as a Matter of Law"

Sanofi further argues that even considering Plaintiffs' experts' testimony, Plaintiffs have failed to create a genuine dispute of material fact because the Taxotere label is "adequate as a matter of law." Generally, the adequacy of a prescription-drug warning is assessed under the applicable state

---

[21] Plaintiffs also appear to agree that expert testimony is generally required to survive a motion for summary judgment on label adequacy.

[22] *See* Doc. 628.

[23] *See* Doc. 631.

[24] *See* Doc. 619.

substantive law.[25] Nevertheless, courts recognize that "[i]t is axiomatic that an essential element of a failure to warn claim is a defendant's failure to adequately warn about the alleged risks associated with its product."[26] "In prescription drug cases like this one, the learned intermediary doctrine modifies the adequacy analysis."[27] Under this doctrine—which no party disputes applies here[28]—"adequacy in the context of prescription drugs is a function of whether the doctor, rather than the patient, would reasonably understand the risks."[29] "Physicians become learned intermediaries only when they have received adequate warnings from the drug manufacturer."[30]

"Ordinarily, the adequacy of a warning is a factual matter that will be determined by the trier of fact."[31] It may, however, "become a question of law

---

[25] *See* H.B. v. Abbott Laboratories, Inc. (*In re* Depakote) (hereinafter "*In re Depakote*"), No. 3:15-cv-00702, 2017 U.S. Dist. LEXIS 174218, at *7–8 (S.D. Ill. Oct. 20, 2017) (holding that Maryland law applied to the adequacy analysis); *see also In re* Bard IVC Filters Prod. Liab. Litig., 969 F.3d 1067, 1076–77 (9th Cir. 2020) (applying Georgia law in concluding that the adequacy of the defendant-manufacturer's warnings regarding its G2 Filter was a question properly posed to the jury).

[26] *In re Taxotere*, 462 F. Supp. 3d at 652 (quoting *In re* Fosamax (Alendronate Sodium) Prods. Liab. Litig., No. 12-cv-492, 2014 WL 2738224, at *8 (D.N.J. June 17, 2014)).

[27] *Id.*

[28] *See In re* Norplant Contraceptive Prods. Liab. Litig., 215 F. Supp. 2d 795, 813 (E.D. Tex. 2002) (recognizing that although each state's laws "may permit different exceptions to the doctrine," most jurisdictions "excuse a drug manufacturer from warning patients who receive its product when the manufacturer properly warns the prescribing healthcare provider of the product's dangers").

[29] *In re Taxotere*, 462 F. Supp. 3d at 652 (quoting *In re* Meridia Prods. Liab. Litig., 328 F. Supp. 2d 791 (N.D. Ohio 2004), *aff'd sub nom*, Meridia Prods. Liab. Litig. v. Abbott Laboratories, 447 F. 3d 861, 867 (6th Cir. 2006)).

[30] *Meridia*, 447 F.3d at 867 (quoting Thom v. Bristol–Myers Squibb Co., 353 F.3d 848, 853 (10th Cir. 2003)).

[31] Nelson v. C.R. Bard, Inc., 44 F.4th 277, 282 (5th Cir. 2022) (applying Mississippi law).

where the warning is accurate, clear and unambiguous." [32] "A warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against."[33] Courts have found a drug's label adequate where it is "reasonable under the circumstances."[34] "[T]o be reasonable, the warning should neither understate nor overstate the known risks associated with the use of a particular product."[35]

Further, courts presiding over multidistrict litigation have, in appropriate circumstances, resolved warning-adequacy issues on summary judgment. For example, in *In re Fosamax*, the court held that a warning was adequate as a matter of law where the label was "accurate, clear, consistent, and, read as a whole, conveyed 'an unmistakable meaning as to the consequences of ingesting the drug.'" [36]

Here, Plaintiffs do not argue that this Court must engage in an individualized choice-of-law analysis in order to resolve Sanofi's Motion for Summary Judgment.[37] Rather, Plaintiffs dispute that the Taxotere label is

---

[32] *Meridia*, 447 F.3d at 867 (quoting *Thom*, 353 F.3d at 853); *see also* Saraney v. TAP Pharm. Products Inc., No. 1:04 CV 02026, 2007 WL 148845, at *5 (N.D. Ohio Jan. 16, 2007)).

[33] *Nelson*, 44 F.4th at 282; *see also* 12 BUS. & COM. LITIG. FED. CTS. § 131:7 n.4 (5th ed.) (collecting cases deeming warnings adequate as a matter of law "where the adverse effect ultimately visited upon the plaintiff was one the manufacturer specifically warned against").

[34] *Nelson*, 44 F.4th at 282; *see also Meridia*, 447 F.3d at 876; *In re* Chantix (Varencline) Prods. Liab. Litig., 881 F. Supp. 2d 1333, 1343 (N.D. Ala. 2012).

[35] *Nelson*, 44 F.4th at 282. Again, the Court recognizes that state substantive laws may vary. Nevertheless, the Court will apply the general principals

[36] *In re Taxotere*, 462 F. Supp. 3d at 652 (quoting *In re Fosamax*, 2014 WL 2738224, at *11).

[37] *See, e.g., In re Depakote*, 2017 U.S. Dist. LEXIS 174218, at *11 (determining Maryland substantive law governed the adequacy analysis); *c.f. In re Chantix*, 881 F. Supp. 2d at 1342–43 (finding that, irrespective of any differences among varying states' laws, the black box warning for a smoking-cessation medication was adequate as matter of law where the plaintiffs sought to pursue a theory based on the warning's failure to "tell physicians

"adequate as a matter of law" under the general standards set forth by Sanofi. Even setting aside any choice-of-law issues, however, this Court cannot conclude as a matter of law that Taxotere's label, read as a whole, conveyed an unmistakable warning regarding the relevant risk. Plaintiffs have provided evidence sufficient to show a genuine dispute as to whether the label, in warning about "lacrimal duct obstruction," adequately warned of the specific condition Plaintiffs identify—namely, "stenosis of the nasolacrimal drainage system." Moreover, Plaintiffs argue that the label did not convey the severity of that risk, that is, that stenosis could be permanent.

In support of its argument that "lacrimal duct obstruction" conveys the risk of "stenosis," Sanofi cites the 1995 edition of Stedman's Medical Dictionary, which defines obstruction as a "[b]lockage or clogging, e.g., by occlusion or stenosis."[38] In response, however, Plaintiffs point to the 2006 edition of the same dictionary, which defines stenosis as "a stricture of any canal or orifice," or a "narrowing," and cautions: "[d]o not confuse this word with atresia or occlusion."[39] Thus, the medical literature itself does not (unequivocally) equate "stenosis" with "obstruction."[40]

Sanofi further argues that Plaintiffs' experts have conceded, at least implicitly, that the term "lacrimal duct obstruction" sufficiently conveys the risk "stenosis of the lacrimal drainage system," as well as the possibility that

---

when to prescribe it," the complaint "did not stretch far enough to include such a claim," and the plaintiffs' experts offered no opinions supporting that theory).

[38] Doc. 447-22 at 6.

[39] Doc. 493-104 at 5.

[40] In its prior Order and Reasons granting in part and denying in part Sanofi's motion to dismiss, this Court previously considered and rejected many of the same arguments that Sanofi raises here. *See* Doc. 81.

the obstruction and resulting tearing may become permanent, pointing to the experts' deposition testimony. Plaintiffs respond that Sanofi overstates and at times mischaracterizes these purported concessions. After reviewing the experts' reports, as well as the relevant testimony, the Court finds that at most, it creates competing factual inferences that are properly resolved by a jury, rather than summary judgment.

Indeed, the experts appear to disagree on this issue. Sanofi relies on its regulatory expert, Dr. Sul, who opines that there is no material distinction between "nasolacrimal" and "lacrimal," or between "potentially permanent stenosis" and "obstruction," because those terms do "not inherently change the characterization of the condition or impart additional or more useful information for the prescriber."[41] Dr. Ross, by contrast, opines that the Adverse Reactions section should have warned of "[e]xcessive tearing attributable to potentially permanent stenosis to the nasolacrimal drainage system requiring surgical intervention."[42] Dr. Durairaj further opines that "lacrimal duct obstruction" is not terminology he uses in his practice. As such, Plaintiffs have introduced evidence from which a reasonable jury could conclude that the warning failed to clearly communicate the nature and severity of the condition.

Further, even assuming that the label's warning about "lacrimal duct obstruction" conveyed the risk at issue, there remains a genuine dispute of material fact as to whether the warning was misleading between 2003 and 2020.[43] Courts have recognized that "[m]erely mentioning a possible injury or

---

[41] Doc. 447-9 at 9.

[42] Doc. 447-20 at 62.

[43] Plaintiffs argue that the warning was "worse than no warning at all." Doc. 486 at 9.

adverse effect is not necessarily adequate."[44] "Rather, '*[t]he jury* is to consider *all* pertinent factors' in determining the adequacy of a product warning," including, for example, the "seriousness of the consequences."[45] Here, between 2003 and 2014, the label stated, in relevant part:

> Ophthalmologic: conjunctivitis, lacrimation, or lacrimation with or without conjunctivitis. Excessive tearing, which may be attributable to lacrimal duct obstruction has been reported. Transient visual disturbances (flashes, flashing lights, scotomata) typically occurring during drug infusion and in association with hypersensitivity reactions have been reported. *These were reversible upon discontinuation of infusion.*[46]

In 2014, this section was revised to state:

> Ophthalmologic: conjunctivitis, lacrimation, or lacrimation with or without conjunctivitis. Excessive tearing, which may be attributable to lacrimal duct obstruction has been reported. Transient visual disturbances (flashes, flashing lights, scotomata) typically occurring during drug infusion and in association with hypersensitivity reactions have been reported. These were reversible upon discontinuation of infusion. Cases of cystoid

---

[44] *In re Meridia*, 328 F. Supp. 2d at 809–10 (citing Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 267 (5th Cir. 2002); *see also* Johnson v. C.R. Bard Inc., No. 19-cv-760, 2021 WL 1784661, at *8 (W.D. Wis. May 5, 2021) (finding that, under Wisconsin law, the fact that the product generally warned of possible complications ultimately experienced by the plaintiff did not render the warning adequate as a matter of law); *In re Depakote*, 2017 U.S. Dist. LEXIS 174218, at *16 (applying Maryland law and holding that although there was no dispute that the prescription drug Depakote's label "included the 1-2% risk of spina bifida," the label was not adequate as a matter of law because, among other things, the label excluded a "last resort instruction" and included a "statement that 'all antiepileptic drugs carry a risk of birth defects'").

[45] *Johnson*, 2021 WL 1784661, at *8 (alterations in original) (quoting Mohr v. St. Paul Fire & Marine Ins. Co., 674 N.W.2d 576, 589 (Ct. App. Wis. 2003)); *see also In re* Bard IVC Filters Prod. Liab. Litig., 969 F.3d 1067, 1076–77 (9th Cir. 2020) (applying Georgia law and concluding that label adequacy was a question properly posed to the jury).

[46] Doc. 486-15 at 24 (emphasis added).

11

macular edema (CME) have been reported in patients treated with TAXOTERE.[47]

This language remained until the label was revised in 2020.

Sanofi argues that the phrase "these were reversible upon discontinuation of infusion" plainly refers only to the immediately preceding sentence regarding "transient visual disturbances." The Court disagrees. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that the label suggested that excessive tearing associated with lacrimal duct obstruction was reversible when, according to Plaintiffs, the condition could instead progress to permanent injury.[48]

Moreover, Plaintiffs allege through their expert Dr. Ross not only that the label failed to warn about excessive tearing due to potentially permanent stenosis, but also that it failed to warn physicians regarding (1) prompt referral to an ophthalmologist upon signs of excessive tearing and (2) the potential need for surgical intervention. Citing Dr. Sul's testimony, Sanofi argues that it has no duty to provide such a warning because treatment decisions may vary and manufacturers are not required to instruct physicians how to manage disclosed

---

[47] Doc. 486-17 at 35.

[48] Sanofi further asserts that Plaintiffs have failed to produce expert testimony supporting their contrary interpretation. Courts have recognized, however, that warning adequacy ordinarily must be established through expert testimony "except in the more obvious situations." *Eghnayem*, 873 F.3d at 1323. But even assuming expert testimony is required on this theory, Plaintiffs have produced it—Dr. Ross's proposed warning omits the "reversible" language entirely, and Dr. Knopf opines that the label implies that the injury is reversible.

12

side effects. In relying on competing expert testimony, however, Sanofi again underscores the factual dispute presented here.[49]

Setting aside the fact that Plaintiffs' expert disagrees, Dr. Sul's opinions do not conclusively establish that Sanofi had no duty to include Plaintiffs' proposed warning. According to Dr. Sul, the FDA generally declines to include "management instructions for adverse events" in labels in order to avoid "dictating the practice of medicine."[50] As to Plaintiffs' proposed warning regarding referral to an ophthalmologist, such a warning is not necessarily a "management instruction." Further, while the parties do not argue that any specific state's law applies, courts in several jurisdictions have held that an inadequate warning claim may be based on "alleged inadequacies in a recommended medical monitoring or testing regime."[51] And as Plaintiffs point out, the Taxotere label itself contains comparable language elsewhere in the Warnings and Precautions section. For example, the warning regarding cystoid macular edema states that "[p]atients with impaired vision should undergo a prompt and comprehensive ophthalmologic examination."[52] As to Plaintiffs'

---

[49] Sanofi argues that Plaintiffs' experts have conceded that the term "lacrimal duct obstruction" adequately warns of the risk of surgical intervention. As stated above, to the extent any concessions were made, the Court finds that they are not dispositive.

[50] Doc. 447-9 at 9.

[51] *Stahl*, 283 F.3d at 270 (noting that "many courts applying the law of other states have implicitly assumed that medical monitoring recommendations contained in package inserts are 'warnings' by evaluating such recommendations (or the absence of such recommendations) in determining whether a drug manufacturer has fulfilled its duty to warn"); *but see* Dye v. Covidien LP, 470 F. Supp. 3d 1329, 1341 (S.D. Fla. 2020) (holding that, under Florida law, the defendant-manufacturer "need only warn of complications stemming from the use of the [p]roduct—not the subsequent measures medical professionals may employ to treat those complications"). Even assuming, however, that the rule outlined in *Dye* applied here, it would not necessarily extend to Plaintiffs' proposed warning about referral.

[52] Doc. 486 at 18.

proposed warning about surgical treatment, Sanofi's communications with the FDA indicate that the FDA itself initially proposed language to be added to the label indicating that "silastic tube replacement"—a type of surgical treatment—may be required in some cases.[53] Accordingly, the Court cannot conclude as a matter of law that Plaintiffs cannot proceed on their theory that Taxotere's label failed to warn about the need for prompt referral or surgical intervention.

Finally, in addition to opining that the warning in the Adverse Events section should have been revised, Dr. Ross opines that a warning should have been added to the Warnings and Precautions section.[54] Again citing Dr. Sul's opinion, Sanofi argues that Dr. Ross's proposed warning could not properly appear in the Warnings and Precautions section because that section is reserved for risks that are sufficiently "serious or are otherwise clinically significant" such that they have "implications for prescribing decisions or for patient management."[55] To the extent Sanofi argues that federal law categorically prohibits inclusion of stronger warning language in the Warnings and Precautions section, the Court is not persuaded. In his report, Dr. Ross concluded that such a warning would be proper, citing the relevant guidelines and regulations.[56] The remaining issue is therefore whether the label

---

[53] Doc. 447-13 at 2.

[54] Doc. 447-20 at 62.

[55] Doc. 447-9 at 82.

[56] This Court has found that analogous regulatory opinions, to the extent they constitute legal conclusions, are nevertheless permissible. *See* Doc. 628. Moreover, courts, including this Court, have found expert testimony pertinent to the issue of whether a warning is properly placed on a prescription drug's label. *See, e.g.*, *In re Taxotere*, 462 F. Supp. 3d at 674–75 (Milazzo, J.) (holding Taxotere's warning adequate as a matter of law where the label expressly disclosed the relevant risk and the plaintiffs produced no expert evidence

14

adequately conveyed the risk. In resolving that issue, the jury may consider the parties' competing expert testimony.

At bottom, this case does not present the type of clear and unambiguous warning that may properly be deemed adequate as a matter of law. Significant disputes remain regarding whether the Taxotere label adequately conveyed the nature and severity of the condition, as well as whether aspects of the warning were misleading. Those disputes are for the jury to resolve. Accordingly, Sanofi's Motion for Summary Judgment must be denied.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Sanofi's Motion to for Summary Judgment Based on Label Adequacy (Doc. 447) is **DENIED.**

New Orleans, Louisiana this 25th day of June, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

supporting their theory that the warning was inadequate because it did not appear in the "Warnings and Precautions" section); *In re Chantix*, 881 F. Supp. 2d at 1340–43.