UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL NO. 3023 |
| EYE INJURY | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | SECTION: "H" (5) |
| Juanita Anderson, Case No. 2:22-cv-04751 | ) | |

## ORDER AND REASONS

Before the Court is Sanofi's Motion for Summary Judgment (Doc. 546). For the reasons set forth herein, the Motion is **GRANTED.**

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel, that Plaintiffs were administered for the treatment of cancer, primarily breast cancer.[1] Among these companies are Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively, "Sanofi"). Plaintiffs allege that Taxotere caused them to sustain injuries to their lacrimal systems, including punctal, canalicular, and/or nasolacrimal duct stenosis, which resulted in excessive tearing, otherwise known as epiphora.[2] Plaintiffs allege claims based on failure to warn and negligence. Although it has undergone various revisions, as of 2002, the

---

[1] Taxotere is the brand name for the drug docetaxel.

[2] For reference, this Court provided extensive background on the injury at issue and the facts giving rise to this case in its prior Orders addressing preemption. Doc. 583; Doc. 591.

1

Taxotere label has warned about "excessive tearing which may be attributable to lacrimal duct obstruction."[3]

Pursuant to Case Management Order No. 16, on March 28, 2024, the Court identified certain plaintiffs selected by the parties for inclusion in the bellwether pool, including Plaintiff Juanita Anderson.[4] Plaintiff Anderson was first diagnosed with breast cancer in 2007. She was diagnosed with a recurrence of breast cancer in August 2013, after which her oncologist, Dr. Gary Burton, prescribed a chemotherapy regimen consisting of Taxotere and Cytoxan. Plaintiff Anderson received chemotherapy every three weeks from September 27, 2013, through December 27, 2013.

On December 2, 2022, Plaintiff Anderson filed her Short Form Complaint alleging that she "suffers from chronic and debilitating epiphora due to permanent damage to her lacrimal drainage system."[5] On June 16, 2025, Sanofi filed the instant Motion for Summary Judgment, arguing that Plaintiff Anderson's claims are time-barred under Louisiana law and that regardless, Plaintiff Anderson cannot establish the causation element of her claims.[6] Plaintiff Anderson opposes.[7]

---

[3] *See* Doc. 553-17 at 35.

[4] Doc. 255.

[5] Doc. 546-7 at 6. In Case Management Order No. 2, the Court ordered plaintiffs to file a master complaint collectively and short-form complaints individually, which adopted the allegations in the master complaint. *See* Doc. 20. A Master Complaint against Sanofi was filed on May 13, 2022, and Plaintiff Anderson's Short Form Complaint adopts the allegations contained therein. Doc. 25 (Master Complaint); Doc. 546-7 (Short Form Complaint).

[6] Doc. 546.

[7] Doc. 553.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[9] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[10] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[11] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[12] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[8] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[9] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[10] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[11] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[12] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[13] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[14]

## LAW AND ANALYSIS

Sanofi argues that Plaintiff Anderson's claims are time-barred under Louisiana law.[15] At the time her claims arose, Louisiana Civil Code article 3492 provided a one-year liberative prescription period for delictual actions, including products-liability cases.[16] Ordinarily, "prescription commences to run from the day injury or damage is sustained."[17] Under Louisiana law, however, "there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agere non currit praescriptio*, which means '[n]o prescription runs against a person unable to bring an action.'"[18] "The doctrine tolls prescription under any of four 'exceptional circumstances,' one of which is 'where the cause of action is not known or reasonably knowable by the plaintiff,' termed the 'discovery rule.'"[19]

---

[13] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[14] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[15] The parties do not dispute that Louisiana law governs Plaintiff Anderson's claims.

[16] Bruno v. Biomet, Inc., 74 F.4th 620, 623 (5th Cir. 2023) (citing LA. CIV. CODE art. 3942 (2023)). In 2024, Article 3492 was replaced by an otherwise identical statute providing for a liberative prescription of two years. *See* 2024 La. Acts 423 (H.B. 315). The two-year period, however, was "given prospective application only" and applies only to claims "arising" after July 1, 2024, the statute's effective date. *Id.* Since Plaintiff Anderson's claims arise from her 2013 treatment from Taxotere, the one-year prescriptive period applies.

[17] *Bruno*, 74 F. 4th at 623 (citation modified).

[18] *In re* Taxotere (Docetaxel) Prods. Liab. Litig., 995 F.3d 384, 390–91 (5th Cir. 2021) (quoting R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963)) (alterations in original).

[19] *Bruno*, 74 F. 4th at 623 (quoting *In re Taxotere*, 995 F.3d at 390–91).

Before proceeding with the analysis, a brief review of the relevant dates is required. Plaintiff Anderson testified that she began having symptoms of tearing shortly after beginning chemotherapy in September 2013. She reported her symptoms to Andrea, Dr. Burton's assistant, who told her that her tearing was a side effect of chemotherapy that would eventually "go away."[20] Following the completion of chemotherapy in December 2013, Plaintiff Anderson continued to experience excessive tearing. While she testified that her tearing is continuous, she also stated that it is sporadic and intermittent.[21] Although Plaintiff Anderson continued to see her regular eye-care provider in the years following her chemotherapy, she did not seek treatment specifically for her tearing condition.

While the record does not reflect the exact date that Plaintiff Anderson first contacted her attorneys, she testified that she did so at some point in the fall of 2020. On November 23, 2020, Plaintiff Anderson signed authorization forms permitting the release of her medical records to her attorneys, who ultimately referred her to Dr. Brian Vekovius, an oculoplastic surgeon. On December 6, 2021, Dr. Vekovius diagnosed Plaintiff Anderson with "lacrimal epiphora due to insufficient drainage," and Plaintiff Anderson underwent probing and irrigation.[22] Less than a year later, on December 2, 2022, Plaintiff Anderson filed a complaint in this matter. [23] At a follow-up appointment on

---

[20] *See* Doc. 553-1 at 1.
[21] *See* Doc. 546-5 at 207–08.
[22] Doc. 553-6 at 10.
[23] Doc. 546-7.

January 6, 2022, Dr. Vekovius additionally diagnosed punctal stenosis and recommended she have a snip punctoplasty.[24]

Plaintiff Anderson filed her Short Form Complaint on December 2, 2022. Her claims are timely, therefore, if prescription began on or was suspended until December 2, 2021. The Court's prescription analysis proceeds in two steps. First, the Court must determine the date at which Plaintiff Anderson's claims accrued, *i.e.*, the date that prescription would ordinarily commence.[25] If, based on that date, Plaintiff Anderson's claims appear to have prescribed, the Court then considers whether *contra non valentem* otherwise suspended prescription.[26]

### a. When Plaintiff Anderson's claims accrued

The parties dispute when Plaintiff Anderson's claims accrued. Article 3492 provides that prescription begins to run "from the day injury or damage is sustained."[27] "[D]amages are said to be sustained 'when [the damage] has manifested itself with sufficient certainty to support accrual of a cause of action.'"[28]

---

[24] Doc. 553-6 at 13.

[25] *See Bruno*, 74 F. 4th at 623; *see also* Jenkins v. Bristol-Meyers Squibb Co., 689 F. App'x 793, 795–96 (5th Cir. 2017) Generally speaking, "[i]f the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred." *In re* Taxotere Docetaxel Prods. Liab. Litig., MDL No., No. 16-2740, No. 16-17039, 2020 WL 1815854 (E.D. La. Apr. 7, 2020) (citations omitted). The Fifth Circuit has recognized, however, that "[t]here is some question as to whether this burden-shifting rule applies at a motion for summary judgment." *In re Taxotere*, 995 F.3d at 389.

[26] *Bruno*, 74 F. 4th at 623.

[27] LA. CIV. CODE art. 3492 (1983).

[28] *Jenkins*, 689 F. App'x at 795 (alterations in original) (quoting Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La. 1993)).

Sanofi contends in its Motion that Plaintiff Anderson's claim accrued, and prescription began to run, when Plaintiff Anderson first experienced tearing during her 2013 chemotherapy treatment. Plaintiff Anderson responds that because (1) tearing is not her alleged injury and (2) the injury that she actually alleges (i.e., permanent damage to her lacrimal system) is progressive, Sanofi has not carried its burden of proving the date at which her claim accrued. Plaintiff Anderson further contends that in 2013, she was not aware that she had a permanent injury and appears to take the position that her claims did not accrue until she received a definitive diagnosis.

Plaintiff Anderson's argument, however, conflates the first step of the prescription analysis with the second. The Fifth Circuit has made clear that a plaintiff's knowledge is irrelevant to the initial inquiry, which focuses solely on when injury or damage was sustained under the statute.[29] "In cases where injury or damage is not immediately apparent, 'prescription will begin to run when the damage is sustained. However, *contra non valentem* will suspend the running of the prescriptive period until the claimant knows or should

---

[29] *In re Taxotere*, 995 F.3d at 389–90 (It is important that Article 3492's prescription provision does not incorporate equitable-tolling principles . . . . Without a 'date of discovery' provision in the prescriptive statute, we look to when the injury was sustained to determine when the prescription period began to run."); *See also* Averette v. Bayer Healthcare Pharms. Inc., No. 13-05968, 2014 WL 1246851, at *3 (E.D. La. Mar. 25, 2014) (noting that under the doctrine of *contra non valentem*, "in cases involving latent injury, the cause of action accrues when damages are first suffered, but the prescription period does not run until such time as a reasonable plaintiff would become aware of the connection between her injured condition and the defendant's tortious actions"); Grenier v. Med. Eng'g Corp., 243 F.3d 200, 208 n.2 (5th Cir. 2001) (noting that "[t]he district court failed to differentiate the question of when damages occurred from the question of when the plaintiff became aware of the damages," and that, "[a]s we understand Louisiana law, the first question determines when a cause of action accrues; the second determines when a tolled prescription period begins to run").

reasonably know that he has suffered damages.'"[30] Further, under Louisiana law, "[t]he commencement of prescription does not . . . wait for the pronouncement of a victim's physician or of an expert." [31] Rather, "[a] cause of action accrues when damages are first suffered."[32] Thus, "the crucial date for the prescriptive period is the date of injury and not the date of diagnosis."[33]

Here, Plaintiff Anderson does not dispute that she experienced excessive or persistent tearing as alleged in her Short Form Complaint at some point during the course of her chemotherapy and that she continues to experience excessive tearing to this day.[34] Accordingly, at the earliest, statutory prescription would have commenced in 2013—when Plaintiff Anderson could have first realized symptoms and sustained damages stemming from her use of Taxotere.[35]

---

[30] Landry v. NuVasive Inc., No. 6:16-cv-00192, 2018 WL 1321972, at *3 (W.D. La. Mar. 14, 2018) (quoting *Brown*, 52 F.3d at 527).

[31] *Jenkins*, 689 F. App'x at 796 (quoting Luckett v. Delta Airlines, Inc., 171 F.3d 295, 300 (5th Cir. 1999)).

[32] *Id.* (quoting Grenier v. Med. Eng'g Corp., 243 F.3d 200, 204 n.2 (5th Cir. 2001)).

[33] *Id.* (quoting Crosby v. Am. Med. Sys., Inc., No. CIV. A. 89-4882, 1991 WL 194724, at *2 (E.D. La. Sept. 20, 1991)).

[34] Plaintiff Anderson testified that she experienced tearing during and after chemo. *See* Doc. 546-5 at 122. Her Plaintiff Fact Sheet also states that her tearing began "around December 2013." Doc. 546-3 at 35.

[35] Plaintiff Anderson is correct to the extent that she argues that the relevant date is the date she sustained a "cognizable injury," not necessarily the date she sustained *any* Taxotere-related symptoms. *See Jenkins*, 689 F. App'x at 796. To determine what constitutes a "cognizable injury," the Court must look to the allegations in Plaintiff Anderson's Short Form Complaint. *See In re Taxotere*, 995 F.3d at 389–90. Although Plaintiff Anderson contends that tearing is different than the permanent injury which she alleges, Plaintiff Anderson's Short Form Complaint, which adopts the allegations in the Master Complaint, alleges that she suffered suffers from "chronic and debilitating epiphora due to permanent damage to her lacrimal drainage system" as well as "daily disruption" because of excessive tearing, or epiphora, and that she continues to suffer from "persistent tearing and disfigurement." Doc. 546-7 at 6; Doc. 26 at 1, 3, 18.

**b. Whether *contra non valentem* tolled prescription of Plaintiff Anderson's claims**

The dispositive question is whether prescription was suspended by the discovery rule under the doctrine of *contra non valentum*.[36] "Tolling pursuant to *contra non valentem* ends, and the prescriptive period begins, on 'the date the injured party discovers or should have discovered the facts upon which his cause of action is based.'"[37] Stated another way, the Court must determine whether Plaintiff Anderson acquired "actual or constructive knowledge" of the alleged connection between her injuries and Taxotere prior to December 2, 2021, that is, one year before she filed suit.[38]

"Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry."[39] Even so, "constructive knowledge requires more than a mere apprehension something might be wrong."[40] But "when a plaintiff suspects something is wrong, he must seek out those whom he believes may be responsible for the specific injury."[41] In this inquiry, reasonableness is assessed in light of the plaintiff's "education and intelligence."[42]

Sanofi first argues that *contra non valentum* does not apply because Plaintiff Anderson failed to conduct a reasonable investigation into the cause

---

[36] *See* Crochet v. Bristol-Myers Squibb Co., 804 F. App'x 249, 252 (5th Cir. 2020).

[37] *Jenkins*, 689 F. App'x at 796 (quoting Eastin v. Entergy Corp., 2003-C-1030 (La. 02/06/04), 865 So.2d 49, 55).

[38] *Crochet*, 804 F. App'x at 252–53 (citing Campo v. Correa, 2001-0646 (La. 6/21/02), 828 So. 2d 502, 510).

[39] *Campo*, 828 So.2d at 510–11.

[40] *Bruno*, 74 F. 4th at 624 (citation modified).

[41] *Id.* (citation modified).

[42] *Id.* (citation modified).

9

of her injuries. It further contends that regardless, Plaintiff Anderson had actual knowledge of her claims no later than November 23, 2020, when she signed the above-mentioned medical authorization forms. Plaintiff Anderson counters that she inquired into her symptoms with her oncologist, that she reasonably relied on her oncologist's assertion that her tearing would go away, and that her failure to further inquire into the issue with an eye specialist was therefore reasonable. Reiterating her prior arguments, Plaintiff Anderson contends that she did not realize she had a permanent injury related to her Taxotere use until Dr. Vekovius diagnosed her with punctal stenosis and advised her that surgery could alleviate her symptoms at her follow-up appointment.

Although Sanofi appears to take the position that a plaintiff's retention of an attorney is dispositive, the Louisiana Supreme Court "has not pronounced a strict, bright-line rule stating that, when a party hires an attorney, such an event is dispositive proof of the party's knowledge that he has sustained a legally compensable injury."[43] Rather, "[t]he hiring of an attorney is evidence, within an entire evidentiary record, which a trial court considers when making a factual determination of when a party had actual or constructive knowledge of their injury."[44]

Nevertheless, considering the facts of this case, the Court finds that at the latest, Plaintiff Anderson had actual or constructive knowledge of her claims as of November 23, 2020—the date she signed authorization forms

---

[43] State v. La. Land & Expl. Co., 20-00685 (La. 6/30/21), 347 So.3d 684, *aff'd on reh'g*, (La. 6/1/22), 339 So.3d 1163, 1170–71.
[44] *Id.* at 689.

releasing her medical records to counsel. Louisiana courts have considered the fact that a plaintiff has "consulted an attorney and, at that same time, specifically signed a medical authorization form," as evidence that the plaintiff was "clearly aware of the injuries upon which suit was later filed."[45]

Moreover, here, Plaintiff Anderson's own testimony confirms that she had knowledge of her claims:

> Q: Okay. So, when you signed this as of November 23rd, 2020, you had already contacted the Hotze Runkle Law Firm, correct?
> A: Yes.
> Q: You had already hired them, correct?
> A: Yes.
> Q: And you already thought that you had a legal claim at that point, correct?
> A: Yes.[46]
>
> . . .
>
> Q: Okay. Was there any point in time after hiring them that you thought, I don't have a legal claim?
> A: No.[47]

Plaintiff Anderson argues that her contact with the law firm creates a genuine issue of material fact, relying on the following testimony:

> Q: Okay, so when you signed this authorization and hired the Hotze Runkle Law Firm in the fall of 2020, you had an appointment with Dr. Burton that same fall, in August of 2020. Did you ask Dr. Burton at that appointment about this lawsuit?
> A: I might've spoken to Andrea about it.
> Q: Do you think you spoke to Andrea about it?

---

[45] *Id.* at 1182 (McCallum, J., concurring) (citing Guitreau v. Kucharchuk, 99-2570 (La. 5/16/000), 763 So.2d 575).

[46] Doc. 546-5 at 193.

[47] *Id.* at 193–94.

A: I can't remember.

Q: Okay.

A: But if I would've talked to someone, it would've been Andrea.

Q: Okay. Do you—do you think that you told Andrea, hey, I'm going to file a lawsuit from one of the drugs that you guys gave me, what do you think about that?

A: No, I didn't say that.

Q: Why didn't you ask her about it?

A: I don't know.

Q: Had you already made your decision at that point you were going to file a lawsuit?

A: No. I just -- no. I just don't remember telling her that I did, that I was. I don't remember that.

Q: You didn't want her opinion on it?

A: No.

Q: Why not?

A; She was—I don't know. Let me just was it like that, I don't know. I wasn't already going to—when I read and tell what it was about, I just called.

Q: You just called the lawyers?

A: Yes.

Q: Okay.

A: To speak with someone.[48]

The Court finds that, at best, this testimony establishes only that Plaintiff Anderson had not *decided* to file suit—not that she did not know that she could have done so. As such, it does not create a genuine issue of material fact as to Plaintiff Anderson's actual or constructive knowledge. This conclusion is further supported by Plaintiff Anderson's testimony that she always assumed—based on representations made by her oncologist—that her tearing was at least related to chemotherapy.

---

[48] Doc. 553-2 at 3.

The Court acknowledges that in some cases, prescription may be tolled until a plaintiff receives a diagnosis, and that "'[t]he law does not impose upon a layman the obligation to self-diagnose a . . . condition,' and 'mere apprehension by plaintiff that something was wrong is not sufficient to start prescription.'"[49] Even so, "[i]gnorance of the probable extent of injuries materially differs from ignorance of actionable harm, which delays commencement of prescription."[50]

Finally, Plaintiff Anderson argues that she retained her attorneys "in the summer of 2020, in the midst of the global COVID-19 pandemic," and that she "reported in multiple psychiatric therapy sessions throughout 2020 and 2021 that she was traumatized by the deaths of her family and friends, including the deaths of her sister and cousin from contracting COVID while in the hospital."[51] Plaintiff Anderson therefore contends that "the extraordinary global circumstances during 2020 and 2021 should also be considered in determining whether" she "should have subjected herself to a medical environment to obtain a diagnosis earlier."[52] That argument, however, must be rejected.

As just stated, Plaintiff Anderson need not have obtained a diagnosis for the Court to find that she had actual or constructive knowledge sufficient for the prescriptive period to commence. In any event, the COVID-19 pandemic is not relevant to whether the discovery rule under the doctrine of *contra non*

---

[49] *Crochet*, 804 F. App'x at 255–56 (alterations in original) (quoting Cordova v. Hartford Accident & Indem. Co., 66,585, (La. 7/23/1980), 387 So. 2d 574).

[50] *Guitreau*, 763 So.2d at 580.

[51] Doc. 553 at 12.

[52] *Id.*

13

*valentum* applies. Instead, it pertains to the first circumstance in which the doctrine may toll prescription, that is, "[w]here there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action."[53] While "[a] pandemic could fall under this category . . . [,] the mere occurrence of a catastrophe does not suffice to invoke the maxim *contra non valentem*."[54] "Rather, 'the impossibility of acting must be absolute.'"[55]

In *Fleury v. Sodexo*, another section of this Court rejected the plaintiff's argument that the COVID-19 pandemic tolled prescription under the theory of *contra non valentum*.[56] This was so because "[w]hile COVID-19 'impacted the manner by which courts and law offices conducted business,' this did not mean 'that courts were completely shut down, preventing any access to them.'"[57] Further, while the Court acknowledged that Louisiana did statutorily "extend legal deadlines, including prescription," it reasoned that the plaintiff's claims were not subject to those suspensions.[58] Finally, the Court found persuasive the fact that the plaintiff was not a pro se litigant: "[e]ven if COVID-19 made it more difficult to commence a lawsuit, [the plaintiff] was represented by counsel who could have easily filed the complaint electronically."[59]

---

[53] Fleury v. Sodexo, Inc., No. 21-2373, 2022 WL 17532295, at *4 (E.D. La. Dec. 8, 2022) (Vance, J.) (quoting Fontenot v. ABC Ins. Co., 674 So. 2d 960, 963 (La. 1996)).

[54] *Id.* (citation modified).

[55] *Id.* (quoting Felix v. Safeway Ins. Co., 15-0701 (La. App. 4 Cir. 12/16/15), 183 So. 3d 627, 633).

[56] *Id.* at *4–5.

[57] *Id.* at *4.

[58] *Id.*

[59] *Id.* at *5.

14

Here too, Plaintiff Anderson has failed to show that COVID-19 made it impossible for her to pursue her claims. Plaintiff Anderson has not shown (and does not attempt to argue) that the extension of deadlines during the pandemic would have been applicable to her case.[60] And like the plaintiff in *Fleury*, Plaintiff Anderson was represented by counsel who could (and ultimately did) file an electronic complaint.

Accordingly, the Court finds that (at the latest) Plaintiff Anderson had actual or constructive knowledge as of the date she signed authorization forms on November 23, 2020, and the one-year prescriptive period commenced on that date. Because Plaintiff Anderson did not file suit until December 2, 2022, her claims are prescribed. The Court therefore need not reach Sanofi's alternative argument that Plaintiff Anderson has not shown sufficient evidence supporting the causation element of her claims.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Sanofi's Motion for Summary Judgment (Doc. 546) is **GRANTED.** Plaintiff Anderson's claims are **DISMISSED WITH PREJUDICE.**

---

[60] The statute states that "[a]ll prescriptions, including liberative, acquisitive, and the prescription of nonuse, abandonment periods, and all peremptive periods shall be subject to a limited suspension or extension during the time period of March 17, 2020, through July 5, 2020; however, the suspension or extension of these periods shall be limited and shall apply only if these periods would have otherwise expired during the time period of March 17, 2020, through July 5, 2020. The right to file a pleading or motion to enforce any right, claim, or action which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020." LA. REV. STAT. § 9:5829.

15

New Orleans, Louisiana this 2nd day of July, 2026.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

16